### 12301.　MOSELEY *v.* PATTERSON *et al.*

Even if the act of the defendants' servant or agent was negligent as alleged, the evidence clearly established that it was not the proximate and efficient cause of the death of the plaintiff's husband, for which she sought to recover damages; and a nonsuit was proper.

DECIDED JUNE 6, 1921.

Action for damages: from city court of Atlanta — Judge Reid. December 15, 1920.

*J. L. Anderson, John T. Pearson,* for plaintiff.

*Robert C. & Philip H. Alston,* for defendant.

HILL, J.　Mrs. Moseley sued Patterson & Son, undertakers, who were engaged also in the business of transporting for hire sick or disabled persons by ambulance from their homes to hospitals. The suit was for damages on account of the death of the plaintiff's husband, alleged to have been caused by negligence of an agent of the defendants in dropping the stretcher on which the plaintiff's husband was being removed from his home to the ambulance for the purpose of being carried to the hospital. Two men were bearing the stretcher, one at the head of the plaintiff's husband and the other at his feet, and it was alleged that the one who was at the head negligently dropped the end of the stretcher, so that it fell violently to the pavement, and the concussion and jar to the body of the sick man was so great that his appendix was ruptured, discharging its contents into his abdominal cavity, in consequence of which he died. The evidence by which the plaintiff attempted to support these allegations was substantially as follows: It was not clear what caused the stretcher bearer to drop his end of the stretcher, or indeed that he dropped it at all. . The most reasonable hypothesis from the evidence was that while going down the steps from the residence to the pavement in front of the sidewalk the bearer of the stretcher in the rear, in some unaccountable manner, slipped on the top step, lost his footing, and fell to the steps, still holding on to the stretcher, but that the stretcher as well as the stretcher bearer fell down either on the steps or on the pavement below the steps. There were two steps from the porch to the pavement, and the steps as well as the pavement were slippery, it being a damp, rainy day; and the print of the rubber heel of the shoe of the stretcher bearer who stumbled and fell indicated that he had slipped on the top step

and fell, still holding to the stretcher, but was unable to prevent it from falling with considerable force against the payment. The fall apparently hurt the patient, as he exclaimed, "Boys, you have killed me." The stretcher was lifted with the patient on it, and he was put in the ambulance and carried to the hospital. This was about eleven o'clock in the morning. A surgeon operated on him for appendicitis about half past two or three o'clock in the afternoon of the same day, and he died after the operation. The evidence showed that during the early morning of the day on which the occurrence took place he was very sick, complaining of intense nausea, and vomiting with great violence, that he went to his work about eight o'clock, and about a half an hour after that his wife was telephoned for and sent for him, as he was very ill and was apparently suffering a great deal of pain, and he was brought back home in an automobile, and when reaching home complained of great nausea and intense suffering in his abdomen. The surgeon who performed the operation at the hospital, and who previously examined him at his home, testified, in substance, that when first examined his condition was serious, that he had a very well-pronounced and well-developed case of appendicitis, and suffered severe pains, and his abdomen was very much distended; that the operation was performed about 2:30 o'clock; that he should have been operated on earlier in the day; that he (the witness) could not say positively that the appendix was ruptured at the time the first examination was made, which was about eleven o'clock, but that in his opinion, judging from the patient's condition at that time and the distention of the abdomen and the rigidity of the muscles, the appendix was then ruptured; that at the time of the operation, when the abdomen was opened, a condition of general peritonitis was found, which meant that it was not local, that in the abdomen the infection had become general in the greater portion of the peritoneum, that pus had formed, and that it flowed freely from the abdominal cavity when the cavity was opened. The witness further testified: "If the appendix had been ruptured on the way to the hospital somewhere about half past eleven o'clock, and we operated about 2:30, you could not have had that amount of pus formed in that short a period of time. If he had had just local peritonitis when he left the house at eleven o'clock, a gen-

eral peritonitis could not have set in and produced that amount of pus in that short time. In my opinion the appendix had ruptured when I first saw him at eleven o'clock; that was before he started to the hospital." Further testifying, this surgeon said that if in the early morning the decedent became violently nauseated and exhausted himself in vomiting, it would show that he was suffering from peritoneal pus; that if he fell while he was being carried to the hospital on a stretcher, the head end of which dropped two or three feet, the fall might have produced some abdominal pressure, but the pressure would not be so great as that produced by violent vomiting. At the end of the evidence for the plaintiff the court, on motion of counsel for the defendant, granted a nonsuit; and this judgment is here for review.

Section 5942 of the Civil Code (1910) is as follows: "If the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover, a nonsuit will be granted." The general rule announced by the Supreme Court is that a motion for nonsuit should not be granted when there is any evidence tending to sustain the plaintiff's action, or where the jury can fairly infer from the evidence a state of facts favorable to the plaintiff. In *Vickers* v. *Atlanta & W. P. R. Co.*, 64 *Ga.* 307, Judge Bleckley expressed the rule in the following original and lucid language: "Nonsuit is a process of legal mechanics: the case is chopped off. Only in a clear, gross case is this mechanical treatment proper. Where there is any doubt another method is to be used — a method involving a sort of mental chemistry; and the chemists of the law are the jury. They are supposed to be able to examine every molecule of the evidence, and to feel every shock and tremor of its probative force." Bearing in mind the above statutory provision and the rulings of the Supreme Court, the question arises: Was there any evidence, direct or circumstantial, tending to sustain the plaintiff's action and from which the jury could fairly deduce an inference favorable to the plaintiff? If there was, the case should not have been "chopped off" by the action of the court, but should have been left to the "chemists of the law," the jury, to examine "every molecule of the evidence" and determine whether it possessed any probative force favorable to the plaintiff's cause of action.

Two questions are involved, and both must concur before the plaintiff's right of action would arise. First it must appear that the agent of the defendants, while in the scope of his employment in bearing the stretcher containing the body of the decedent from the house to the ambulance, was guilty of negligence in connection with the falling of the stretcher either to the steps or on the pavement below the steps. Was the fall of the stretcher due entirely to the accidental slipping or stumbling of the bearer of the stretcher in going down the steps or on the pavement, unmixed with any negligence on his part? " That which is an accident in the law is something that occurs after the exercise of a care that the law requires to be exercised to prevent the occurrence." United States *v.* Boyd, 45 Fed. 851. " Accident is any casualty which could not be prevented by ordinary care and diligence. . . Accident is an occurrence which human prescience and prudence cannot foresee or forestall." 1 Words & Phrases (1st ed.), 64. While the evidence, we think, preponderates in favor of the theory that the fall of the stretcher was due to the accidental slipping of the stretcher bearer, we can not say that this was an occurrence which could not have been guarded against and prevented by the exercise of ordinary care on the part of the stretcher bearer. Questions of negligence are peculiarly for the jury, and in this case the jury would have been authorized to conclude, from all the circumstances surrounding the bearing of the sick man on the stretcher from his bed to the ambulance and down the steps, which were slippery on account of the rain, or on the sidewalk, which was slippery for the same reason, that a prudent man would have guarded his steps so as to have been certain that he would not slip or stumble. In other words, he should and could have exercised a degree of care which would have prevented his slipping or stumbling; and if he could have exercised such a degree of care, his failure to do so was negligence. On this point our conclusion is that the evidence, taken altogether, was of sufficient probative force or value to leave to the determination of the jury the existence of negligence.

It was necessary for the plaintiff to go one step further and produce evidence of sufficient probative force to warrant the jury in arriving at the conclusion that this negligence caused an injury which constituted the proximate or efficient cause of the dece-

dent's death. If there were two causes that may have produced death, and one cause was much more clearly and strongly indicated than the other, it would be reasonable to say that the former was the proximate or producing cause. The hypothesis that the fall caused the rupture of the appendix is a mere conjecture, based upon the circumstance of the fall and the condition of the patient and the expression by him of physical pain. The hypothesis that the appendix was not ruptured by the fall, but that its condition was caused by the progress of the disease and the violent vomiting of the patient suffering from the disease, is clearly established by the expert testimony of the surgeon who examined him both before and after the operation. This surgeon testified that when he examined the decedent early that morning he had a pronounced and well-developed case of appendicitis, and was suffering severe pain, with greatly distended abdomen, and that in his opinion, from this physical condition, the appendix was ruptured at the time *when he first made the examination.* He further testified, as a reason for this opinion, that when he performed the operation he discovered that the infection had become general and that general peritonitis had set up and pus had formed, and that "if the appendix had been ruptured on the way to the hospital somewhere about half past eleven o'clock, and we operated about 2:30, you could not have had that amount of pus formed in that short a period of time. . . *In my opinion the appendix had ruptured when I first saw him at eleven o'clock; that was before he started to the hospital.*" Further testifying on this subject he said: "If the party was being carried out on a stretcher and one end of the stretcher, the head end, was dropped some two or three feet, there might be some abdominal pressure produced there by his falling, but it would not be so great as that produced by violent vomiting." This evidence of the surgeon strongly proves affirmatively that the rupture of the appendix was caused by the effect and progress of the disease, and not by the fall. Indeed, we may reasonably conclude that the only evidence of probative value as to the causes of the rupture of the appendix were the causes stated by the surgeon who performed the operation, who was an expert, and who best knew as to the hypothesis about which he testified. He further testified that the *cause of the death* was inflammation of the peritoneum or lining of the intestine. An-

other symptom indicating that the rupture had taken place before the fall, the surgeon stated, was the intense pain and nausea suffered by the patient. Even if the mere conjecture was sufficient to show that the fall on the steps or on the pavement caused the rupture of the appendix, there was no indication that this rupture caused the patient's death. The testimony of the surgeon was that his death was caused by general peritonitis and the conditions which were produced by the progress of the disease. Without discussing this question further, we conclude that there was no evidence, circumstantial or direct, from which the jury could have reasonably inferred either that the fall of the stretcher ruptured the appendix, or that the rupture of the appendix itself caused the death of the plaintiff's husband; and for this reason the nonsuit was properly awarded.

*Judgment affirmed. Jenkins, P. J., and Slephens, J., concur.*

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*
DECIDED JUNE 6, 1921.