### 14681. GRESHAM v. STEWART.

There was evidence from which the jury could infer that the plaintiff's husband at least impliedly consented for her to board the defendant and retain the money thus made as her separate estate; and the court erred in granting a nonsuit.

DECIDED OCTOBER 3, 1923.

Complaint; from Floyd superior court—Judge Wright. April 13, 1923.

Mrs. Gresham sued Stewart, alleging that he was indebted to her in stated amounts for board, bedding, washing, ironing, and sewing. In his answer he denied that he owed her or made any contract to board with her, and alleged that he made a contract with her husband and settled with the husband up to a named date, and was willing to settle with him for board furnished after that date, and that he had a set-off against the husband. On the trial the defendant, at the close of the testimony introduced by the plaintiff, moved for a nonsuit, on the ground that the evidence showed

"that plaintiff was a married woman living with her husband at the time the contract was made and the board was furnished and services were rendered, and that under the law the earnings and services of the wife belong to the husband, and plaintiff is not entitled to maintain the suit." The court sustained the motion and dismissed the suit, and the plaintiff excepted.

From the evidence it appeared that the plaintiff and her husband lived together in a house rented from the defendant, on the defendant's farm. In her testimony she said: "I contracted with the defendant to furnish him board for $30 a month, and he boarded with me a year and eleven months. . . He came to our house when my husband wasn't there, and says, 'Mrs. Gresham, I have come to board with you.' My husband had nothing to do with making this contract for board. I took him and assigned him to a room in the house. . . During the time that he stayed with me he did not pay me any money for board, not one cent or anything else of value, and he owes me a year and ten months' board bill at the rate of $30 per month. He further owes me for bedding, washing, ironing, and sewing from December 11, 1919, to December 17, 1921. That is reasonably worth $10 per month. I did his washing, starching, ironing, mending, and pressing, and furnished him a nice bed. . . He has never paid me anything. . . I had nothing to do with the renting of the place between my husband and Mr. Stewart." The witness was asked: "Did your husband permit you to make this contract with Mr. Stewart and furnish this board, and did he give you that right?" She answered: "No, sir, he didn't have anything to do with it. . . My husband didn't have anything to do with the contract for board that I heard of. It was mine and Mr. Stewart's. I furnished most of the board to Mr. Stewart. I peddled and sold things and had my own cows and chickens that way at home. . . I never asked Mr. Stewart for a dollar board, but I asked him for a settlement. . . My husband never did have anything to do with this contract that I heard of. Mr. Stewart just came in and asked me for board and I told him I would take him and board him. That was all that was said. It was my house and butter, chickens, and eggs. I did not have to ask anybody. I have never asked anybody permission yet." The plaintiff's sister testified to the same effect as the plaintiff in regard to the contract for board.

The plaintiff's husband testified: "I remember the occasion of him [defendant] coming to my house and beginning to board there. He made the contract with my wife. There was not anything said to me about it; he never mentioned it to me. My wife said something to me about it. My wife done the cooking and furnishing the board. I didn't do anything relative to permitting my wife to make this contract and furnish the board and receive the benefit from it. My wife made it and I just told her it was all right with me if she thought she could take care of him. I gave her that right. . . I had nothing to do with the making of the contract with Mr. Stewart. He never mentioned it to me. Mr. Stewart and I had a contract in 1919 and 1920 for the rent of his farm, for a third and a fourth. . . My wife did Mr. Stewart's washing, sewing, and mending. . . Mr. Stewart and I had contracts against each other and we have never had a settlement. . . I never mentioned to Mr. Stewart about board at all. . . Mr. Stewart never mentioned boarding at my house to me. I never discussed it with my wife before he went there, and I didn't know anything about it until he was there and boarding there. I permitted and consented for my wife to board Mr. Stewart. I told her if she wanted to board him it was all right with me."

*Porter & Mebane,* for plaintiff. *Harris & Harris,* for defendant.

BLOODWORTH, J. In *Cotter* v. *Gazaway,* 141 *Ga.* 534 (1) (81 S. E. 879), the Supreme Court held: "At common law the earnings of the wife belonged to her husband. In Georgia, since the act of 1866, the husband may, by consent or agreement with his wife, express or implied, allow her to engage in an independent business on her own account, and to keep as her separate estate any earnings that she may make in such business. *Sams* v. *Thompson Hiles Co.,* 110 *Ga.* 648 (36 S. E. 104); *Roberts* v. *Haynes,* 112 *Ga.* 842, 844 (38 S. E. 109); *Belcher* v. *Craine,* 135 *Ga.* 73 (68 S. E. 839)." There was evidence in this case from which the jury could infer that the husband of plaintiff at least impliedly consented that she could board the defendant and retain the money thus made as her separate estate. In *East & West Railroad Co.* v. *Sims,* 80 *Ga.* 807 (2) (6 S. E. 595), it was held: "If there be any evidence whatever to sustain the action, it must go to the jury, the court having no discretion in the matter of granting a nonsuit." In *Moseley* v. *Patterson,* 27 *Ga. App.* 135 (107 S. E. 624), Judge Hill, after

quoting section 5942 of the Civil Code of 1910, said: "The general rule announced by the Supreme Court is that a motion for non-suit should not be granted when there is any evidence tending to sustain the plaintiff's action, or where the jury can fairly infer from the evidence a state of facts favorable to the plaintiff. In *Vickers* v. *Allanta & W. P. R. Co.*, 64 *Ga.* 307, Judge Bleckley expressed the rule in the following original and lucid language: 'Nonsuit is a process of legal mechanics: the case is chopped off. Only in a clear, gross case is this mechanical treatment proper. Where there is any doubt another method is to be used—a method involving a sort of mental chemistry; and the chemists of the law are the jury. They are supposed to be able to examine every molecule of the evidence, and to feel every shock and tremor of its probative force.' Bearing in mind the above statutory provision and the rulings of the Supreme Court, the question arises: Was there any evidence, direct or circumstantial, tending to sustain the plaintiff's action and from which the jury could fairly deduce an inference favorable to the plaintiff? If there was, the case should not have been 'chopped off' by the action of the court, but should have been left to the 'chemists of the law,' the jury, to examine 'every molecule of the evidence' and determine whether it possessed any probative force favorable to the plaintiff's cause of action."

As there was some evidence "tending to sustain the plaintiff's action and from which the jury could fairly deduce an inference favorable to the plaintiff," the court erred in granting a nonsuit. See *Reid* v. *Tyson*, 19 *Ga. App.* 677 (2) (91 S. E. 1066), and cases cited.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*