20589. EVANS *v.* STEPHENS.

DECIDED DECEMBER 19, 1930.

*Wilson & Wilson,* for plaintiff.

*Bryan & Middlebrooks, Jerome Crawley, Wilson, Bennett & Pedrick,* for defendant.

BLOODWORTH, J. Mrs. Mattie Evans sued Dr. C. M. Stephens, alleging: that he was a licensed physician engaged in the practice of his profession in the City of Waycross; that as such physician he operated upon her in an endeavor to locate certain pus which had formed in her body during an attack of pleurisy; that for this purpose he used a steel aspirating needle; that said needle was broken off in her body, because of "the want of due care, skill and diligence on the part of the defendant and in grossly failing to do his duty as a physician and surgeon;" and that there was "no carelessness on her part." Defendant filed a plea in which he denied all liability. At the trial, when the evidence for the plaintiff was concluded, the court passed the following order: "The plaintiff having introduced all her evidence, and having rested her case and closed her case, the defendant made a motion to dismiss the

plaintiff's case 'because in the light of the entire record in the case there can be no legal recovery by the plaintiff.' After argument it is considered, ordered, and adjudged that the defendant's said motion be and the same is hereby sustained, and the plaintiff's case is hereby dismissed." Thereupon the plaintiff excepted.

The court erred in dismissing the case. The evidence did not authorize a finding by the judge in favor of the defendant. In *Kelly* v. *Strouse,* 116 *Ga.* 894 (43 S. E. 280), Justice Cobb said: "If a court by any affirmative ruling holds that a judgment should be rendered in favor of a party who is in law not entitled to prevail, such a ruling, no matter in what way it may be made, is an erroneous ruling, and may be reversed on writ of error directly assigning error thereon." Under the foregoing ruling the judgment in favor of the defendant is erroneous "no matter in what way it may be made." It would have been error to grant a nonsuit, or to direct a verdict for the defendant. Where a plaintiff fails to make out a prima facie case, the usual thing to do is to move that a nonsuit be entered. In *Madden* v. *Mitchell Automobile Co.,* 21 *Ga. App.* 111 (94 S. E. 92), this court said: "Questions of negligence are peculiarly for the jury. *Wynn* v. *City & Suburban Ry.,* 91 *Ga.* 344 (7) (17 S. E. 649). Nonsuit should not be granted if there is any evidence to support the allegations of the petition." There is evidence in this case to support the allegations of the petition. In *Augusta Factory* v. *Barnes,* 72 *Ga.* 218 (3) (53 Am. R. 838), it was held: "There was no error in refusing a nonsuit in this case. Whenever a prima facie case is made out, questions of fact should be left to the jury." See *McIntyre* v. *Empire Printing Co.,* 103 *Ga.* 288 (29 S. E. 923); *Carger* v. *Macon Railway &c. Co.,* 126 *Ga.* 626 (55 S. E. 914); *Kile* v. *Vickery,* 153 *Ga.* 301 (2) (111 S. E. 904). In *Moseley* v. *Patterson,* 27 *Ga. App.* 135 (107 S. E. 623), Judge Hill said: "Section 5942 of the Civil Code (1910) is as follows: 'If the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover, a nonsuit will be granted.' The general rule announced by the Supreme Court is that a motion for nonsuit should not be granted where there is any evidence tending to sustain the plaintiff's action, or where the jury can fairly infer from the evidence a state of facts favorable to the plaintiff. In *Vickers*

v. *Atlanta & W. P. R. Co.*, 64 *Ga.* 307, Judge Bleckley expressed the rule in the following original and lucid language: 'Nonsuit is a process of legal mechanics: the case is chopped off. Only in a clear, gross case is this mechanical treatment proper. Where there is any doubt another method is to be used—a method involving a sort of mental chemistry; and the chemists of the law are the jury. They are supposed to be able to examine every molecule of the evidence, and to feel every shock and tremor of its probative force.' Bearing in mind the above statutory provision and the rulings of the Supreme Court, the question arises: Was there any evidence, direct or circumstantial, tending to sustain the plaintiff's action and from which the jury could fairly deduce an inference favorable to the plaintiff? If there was, the case should not have been 'chopped off' by the action of the court, but should have been left to the 'chemists of the law,' the jury, to examine 'every molecule of the evidence' and determine whether it possessed any probative force favorable to the plaintiff's cause of action." In *Vickery* v. *Swicord*, 151 *Ga.* 145 (106 S. E. 92), it was held: "The evidence for the plaintiff tended to sustain the material allegations of her petition, and the court erred in granting a nonsuit and dismissing the petition." It would have been error also to have directed a verdict in this case. A judge can not properly direct a verdict because the strength or weight of the evidence is on one side, nor should a verdict be directed because the evidence of one party is weak and the evidence in favor of the other party is strong. See *Swords* v. *West*, 35 *Ga. App.* 247 (132 S. E. 778); *Trotter* v. *McCoy*, 142 *Ga.* 820 (83 S. E. 857); *Culver* v. *Wood*, 138 *Ga.* 60 (4) (74 S. E. 790); *Blackburn* v. *Lee*, 137 *Ga.* 266 (73 S. E. 1).

Under the rulings in the foregoing cases and in the light of the evidence, this case should have been submitted to the jury. The right of the plaintiff to have her case submitted to a jury rests upon whether there is any evidence tending to support her cause of action, or whether the jury could fairly infer from the evidence a state of facts favorable to her case. Does the evidence introduced by her support the allegations of the petition that in using the aspirating needle the defendant, the physician who operated upon her, failed to use "due care, skill, and diligence" in performing the operation? The proper way to use such a needle is thus stated by Dr. Bussell: "The thickness of the wall through which you have to

insert the needle before getting on the inside is owing to how fat a person is. In this instance it was probably about three quarters of an inch; I imagine a little bit thicker than your hand or finger. After the needle penetrates that wall it goes into lung tissue. . . The needle, when it is brought back, you bring it back to the wall and go back in like that. If you wanted to go up, you would pull the needle out and then go straight up. . . When you insert a needle, and you insert it to make another insertion, the skilful way in which to reinsert it after it has been inserted once, the needle is withdrawn back to the wall until it comes out of the lung tissue and the position is taken; then you go right straight up; that is the usual and correct way of inserting a needle." Did Dr. Stephens use this proper and skilful way in operating in this case? There was but one witness watching Dr. Stephens when he inserted the needle. That witness was J. W. Evans, the husband of the woman operated upon. He swore that he saw the operation and was watching the needle closely, "because I had not seen it done before." "I saw the needle when it first started in. He (Dr. Stephens) shoved it right straight into her side, and he pumped and could not secure any pus; and Dr. Walker told him to try above, and he turned the needle then toward her head and pumped and could not get anything; and then Dr. Walker told him to try below, and then he came right over like this, and the needle popped. He did not withdraw the needle." This evidence is direct, positive and uncontradicted, and shows that the doctor did not follow the "skilful and proper way" of using the needle. Neither Dr. Stephens nor Dr. Walker testified. Dr. Bussell said: "I did not see the needle inserted by Dr. Stephens. . . I did not see the needle put in or how it was used on this occasion." The reason he gave for not seeing "the movements of Dr. Stephens" at the time the aspirating work was done was that he was watching the condition of Mrs. Evans. The uncontradicted evidence of the witness Evans, quoted above, must be accepted as true. Was not this evidence on the question of negligence of such a character that the case should have been submitted to the jury? Does it not show that the court erred in the judgment rendered? In *Glover* v. *Savannah, Florida & Western Ry. Co.,* 107 *Ga.* 34 (32 S. E. 876), it was ruled: "The evidence on the questions of negligence involved was of such a character that the case should have been submitted to a jury. It was therefore error to grant a nonsuit."

This evidence of Mr. Evans is supported by Dr. Bussell, who swore: "If the needle were inserted through the skin and through the wall, the chest wall, and went into those lung tissues, if the needle were not withdrawn back to the wall, and person pressed down on those tissues, if the pressure was very hard on it, it might break it. . . If a needle were inserted straight and should be turned up or down without withdrawing then there would be a tendency to break the needle, it might break. . . If a physician inserted a needle in a person to aspirate and then could not find pus so as to withdraw it, and, instead of drawing the needle back to the wall in order to avoid those tissues, try to change the direction of the needle, and went up and did not get any pus, and then changed the direction and went down without pulling the needle back to the wall, would the tendency be to break that needle? Yes, sir."

With this case submitted to a jury, would not the foregoing evidence authorize them "fairly to infer from the evidence a state of facts favorable to the plaintiff?" Referring again to the opinion of Judge Bleckley in *Vickers* v. *Atlanta &c. R. Co.*, 64 *Ga.* 307, "Nonsuit is a process of legal mechanics; the case is chopped off. Only in a clear gross case is this mechanical treatment proper. Where there is any doubt another method is to be used—a method involving a sort of mental chemistry; and the chemists of the law are the jury." This case is not a clear, gross case authorizing a nonsuit. The evidence presented questions that should have been submitted to the jury, and the judge erred in dismissing the case.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*