30357. SALMON *v.* McCRARY, administrator.

DECIDED MAY 27, 1944. REHEARING DENIED JUNE 7, 1944.

*James Maddox,* for plaintiff in error. *Alec Harris,* contra.

PARKER, J. The defendant in error in his capacity as administrator de bonis non of the estate of Mrs. Mollie Grace, deceased, advertised for sale certain real estate and personal property as the property of the intestate. The plaintiff in error filed two statutory claims, one to the real estate and one to the personal property. In the latter the claim affidavit described, among other articles, "also 1 diamond ring." An equitable petition in aid of and incorporating the claim to the real estate was also filed, seeking specific performance of an alleged contract between the decedent and the claimant for the decedent's making a will disposing of her property to the claimant. The two cases were tried at the same time on the same evidence, and in each case a nonsuit was granted. The plaintiff in error excepted in both cases, taking the land case to the Supreme Court and bringing the instant case to this court. For the decision in the land case see *Salmon* v. *McCrary,* 197 *Ga.* 281 (29 S. E. 2d, 58). The Supreme Court held that the evidence was not sufficient to prove a contract between the plaintiff in error and the deceased for the making of a will by the decedent disposing of her property to the plaintiff in error.

Since realty cannot be the subject of a gift causa mortis (Code, § 48-201; Ellsworth *v.* Cornes, 204 Ark. 756, 165 S. W. 2d, 57; Prendergast *v.* Drew, 103 Conn. 88, 130 Atl. 75), the claimant was required to establish the alleged oral contract of the deceased to execute a will leaving to the claimant all of the deceased's property "so clearly, strongly, and satisfactorily as to leave no reasonable doubt as to the contract," as held by the Supreme Court, as to the real estate involved. We do not think the strictness of that rule applies in proving a gift of personal property in contemplation of death. The Supreme Court case and this case differ in that respect. "A gift in contemplation of death (donatio causa mortis) must be made by a person during his last illness or in peril of death, must be intended to be absolute only in the event of death, and must be perfected by either actual or symbolical delivery. Such a gift, so evidenced, may be made of any personal property by parol and proved by one or more witnesses." Code, § 48-201. The sole question for our consideration seems to be whether or not the evidence offered by the plaintiff in error on her claim to the diamond ring was sufficient to withstand the nonsuit granted by the court. The husband of the claimant testified in part as follows: "My wife was a niece of Mrs. Grace. . . All the time Mrs. Grace was in the hospital in her last illness my wife was there. I know that Mrs. Grace had three diamond rings; following her death I saw my wife with those rings; she had a case that Aunt Mollie kept them in, and she gave it to her before she died. I saw that case after her death; my wife had it. I was not present when she got [it]. Those rings were turned over to the administrator at his request and demand." Miss Holsomback testified that she lived directly across the street from Mrs. Grace's home with Mrs. Stevens; that she was frequently in Mrs. Grace's home and heard her talk about her property. "She would say that she wanted to give what she had to Bessie [Mrs. Salmon, the claimant] and Fred [her husband]; she said she had already given what she had to Bessie and Fred because they had been so nice to look after her. . . I saw some diamond rings she had; I tried them on; she said she had given Bessie the largest stone, and Mrs. Henderson the second one, and I don't know about the third one." Mrs. Stevens testified that she had known Mrs. Grace for 16 or 17 years, having lived just across the street from her for that period of time; that

she was in Mrs. Grace's home almost every day, and Mrs. Salmon was there "looking after her;" that Mrs. Grace never had good health "while I knew her." She testified further that she talked with Mrs. Grace about her property and what she was going to do with it; that Mrs. Grace told her she had lost her only child, and that Mrs. Salmon (Bessie) was as near and dear to her as her only child had been, and had taken the place of her own child; and that "when she left here she wanted Mr. and Mrs. Salmon to have what she had." As to the rings, this witness testified that she followed Mrs. Grace and Mrs. Salmon to the hospital where Mrs. Grace was carried before she died, and that "I found her handbag she kept some things in, and we carried it to the hospital, and went into the room where she was; Mrs. Salmon was there. We attempted to hand this bag to Mrs. Grace, and she said, 'Give it to Bessie, it is hers.' She said what she had in it there was Bessie's, and she told me her rings were in there, and she said they were Bessie's." This witness also testified that she and Mrs. Grace were talking about Mrs. Grace's rings one day before she went to the hospital, and that Mrs. Grace said, "Of course, I want to keep them and wear them as long as I live, but at my death I want the small one to go to Beatrice, that is Mrs. Henderson,—and she said everything else she had and possessed she wanted to go to Bessie." It appears also from Mrs. Stevens's testimony that the day Mrs. Grace was carried to the hospital she said she would not come back, and that she told the witness her rings and some valuable papers were in the bag, and directed the witness "to give them to Bessie," saying, "Honey, you take care of these, you know what to do with them." Mrs. Grace apparently was conscious at that time she was going to die, and said she wasn't going to live. J. A. Primm, who carried Mrs. Grace to the hospital on the last trip before she died, heard her tell Mrs. Salmon, "I want you to have all my belongings, if I shouldn't come back," and heard her say she wouldn't come back alive.

There was other evidence of the close relationship between Mrs. Salmon and Mrs. Grace, and of many services rendered by Mrs. Salmon to Mrs. Grace, over a period of years, well calculated to actuate a desire on the part of Mrs. Grace to make the gift as alleged. The evidence, under all the facts and circumstances shown, was sufficient to carry the case to the jury. It is error to grant a nonsuit when there is any evidence tending to sustain the plaintiff's

claim, or where the jury can fairly and reasonably infer from the evidence a statement of facts favorable to the plaintiff. *Gresham* v. *Stewart,* 31 *Ga. App.* 25, 28 (119 S. E. 445) ; *Brown* v. *Savannah &c. Co.,* 46 *Ga. App.* 393, 396 (167 S. E. 773) ; *Smith* v. *Fischer,* 52 *Ga. App.* 598, 600 (184 S. E. 406), and cit. Though the delivery of the article allegedly given must be proved, it may be proved by circumstantial as well as by direct evidence. *Culpepper* v. *Culpepper,* 18 *Ga. App.* 182 (89 S. E. 161) ; *Whatley* v. *Mitchell,* 24 *Ga. App.* 174 (100 S. E. 229). There was evidence from which the jury could have inferred that there was a gift of the ring perfected by delivery, and it was error to grant a nonsuit.

*Judgment reversed. Sutton, P. J., and Felton, J., concur.*