218.  CORCORAN *v.* MERCHANTS AND MINERS TRANS-

PORTATION COMPANY.

In an action for damages, brought by a servant against the master, for injuries sustained, where evidence is adduced from which the incompetency of the plaintiff's fellow-servants with whom he was put to work may be inferred, and that he did not have equal opportunity with the master to know this fact, and it is doubtful, from the evidence, whether the work was one requiring skill, or merely strength, and whether the injury was caused by negligence or by incompetency, the questions in doubt should be submitted to the jury, and it is error to award a nonsuit.

Action for damages, from city court of Savannah—Judge Norwood.   January 2, 1907.

Argued March 25,—Decided March 28, 1907.

*Robert L. Colding,* for plaintiff.

*O'Connor, O'Byrne & Hartridge,* for defendant.

RUSSELL, J.   Thomas R. Corcoran brought an action against the Merchants & Miners Transportation Company of Savannah, for personal injuries received while he was engaged in storing lumber, "12x12, about 32 feet long," in the hold of one of the steamships of that company. The question involved is the application of the principles of the law of master and servant to the case made by the plaintiff's evidence only; for at its conclusion the court awarded a nonsuit. The petition alleges, that at the time Corcoran received his injury he had been engaged in storing this lumber but thirty minutes; that he had been employed on the

steamer altogether for the space of from two hours to two hours and a half; that the work of loading lumber requires skill and experience, and that it was the duty of the master to exercise ordinary care and diligence in the selection of his employees, and not to retain an employee in his service after the negligence, unskilfulness, or incompetence of the employee was known to him, or where by the exercise of ordinary care and diligence he could and should have known such fact. The petition further alleges, that the fellow-servants with whom Corcoran was put to labor were negligent, unskilful, and incompetent; which fact was well known to the master, or in the exercise of ordinary care and diligence could have been known to him, but was unknown to Corcoran, as he did not have equal means of knowing. The petition further alleges, that Corcoran received his injury by a piece of lumber "12x12, about 32 feet long," falling upon his leg, which mangled and crushed it to such an extent that he lost a part of the leg; and that, as a result, Corcoran sustained permanent injuries, and will be a helpless cripple for the remainder of his life; that the work of storing lumber in ships was in this manner: part of the gang of men would go to one end of the piece of lumber and lift up one end of it and place it as near in position as possible, in which position it was held by some of the men, while the men at the other end of the piece would then lift up the other end and put it in position; that if the men at the piece which was stored first had performed their duty and held the same in position, the injury to Corcoran would have been impossible, but on account of their negligence, unskilfulness, incompetence, and want of care, occasioned by their unfamilarity with the duties to which they were assigned to perform, they failed to hold the said first end in position, but allowed the same to fall to the deck, thus mashing Corcoran's leg in the manner above stated. The petition further alleges, that Corcoran when injured was thirty years of age, and was earning a salary of $60 per month.

The exception to the order granting the nonsuit is the only error assigned. The nonsuit must have been awarded because, in the opinion of the court, the evidence adduced by the plaintiff showed either that he was injured through the negligence of his fellow-servants, for which the master was not responsible, or, if his injury resulted from the incompetence of his fellow-servants,

the plaintiff had an equal opportunity with the company of knowing that fact. If the evidence could not, by any· construction, lead to any other conclusion than that the plaintiff's injury was due to one or the other of these two causes, we would unhesitatingly concur in the opinion of the learned and distinguished judge whose judgment is the subject of complaint. But keeping in view, as we consider the evidence, that the inferences to be drawn from proved facts, as well as their probative value, are within the province of the jury, and that negligence is peculiarly a question of fact, whose existence or absence is to be determined by the jury, we are of opinion that the plaintiff made such a case as should have been submitted to the jury, and it should have been left with them to say whether the injury sustained was due to the negligence or the incompetency of the plaintiff's fellow-servants with whom he was put to work, whether the plaintiff had an equal opportunity with the master of knowing of the incompetency of those with whom he was put to work (if any were incompetent), whether the work was one requiring skill or merely strength, and whether the injury was due to the plaintiff's own lack of strength and proper caution, or was caused by the negligence of the company.

There can be no doubt that it is proper for the court to order a nonsuit where there is *no* proof to support the plaintiff's al‑legations. But this power of the court is to be .most cautiously exercised. A motion for a nonsuit is in the nature of a demurrer to the plaintiff's evidence; that is to say, admitting all that the plaintiff has proved to be true, it is not sufficient in law to entitle him to recover. *Gray* v. *McNeal,* 12 *Ga.* 429. "If there be ·any evidence upon which a verdict could be rendered, the case should not be withholden from the jury." *Tison* v. *Yawn,* 15 *Ga.* 493. Not only must it appear, after admitting all of the facts proved, that the plaintiff has failed to establish his case, but all reasonable deductions therefrom are to be considered in favor of the plaintiff. The rule, as laid down in well-nigh innumerable Georgia cases, is,. that "if there is sufficient evidence to *authorize* the jury to find for the plaintiff, although it may not be .sufficient to *require* them to do so, the nonsuit will not be granted." 4 Michie's Ency. Dig. 553.

We do not desire to express any opinion upon the evidence,

in view of the fact that we feel constrained to order another trial; and we are not prepared to say but that, in one aspect of the case, the inference drawn by the learned judge of the city court of Savannah may not be authorized. But the evidence introduced by the plaintiff is susceptible also of a different deduction. Different inferences may be drawn from testimony although there be no conflict; and "where reasonable men might differ as to the inferences to be drawn from certain evidence, the matter should be left with the jury although there may be no conflict in the evidence. . . A nonsuit should be granted only where 'all the facts proved *and all reasonable deductions from them*' do not entitle the plaintiff to recover." *Dixon* v. *Bristol Savings Bank,* 102 *Ga.* 461. It is assumed by the learned counsel for the defendant in error (and doubtless the court acted upon the same inference drawn from the evidence) that Corcoran had equal opportunity with the company of knowing that the men with whom he was laboring were incompetent; that the injury occurred either through the negligence of his fellow-servants, or because of Corcoran's own mistake in estimating the weight of the piece of timber. It is also inferred, from a portion of Corcoran's evidence, that the work of storing the timber required no skill, and also (because Corcoran stated that he could not shove the timber on, for some reason due to the failure of the men at the other end of the timber to properly hold their end in place) that he was injured by the negligence, and not through the incompetency, of his fellow-servants. But the testimony of Corcoran and Graham is just as susceptible of the construction that Corcoran did not know of the incompetency of his fellow-servants, or have an equal opportunity with the company of knowing it, and that the injury that he sustained was due to the negligence of the company in employing incompetent servants and putting him to work with them, without advising him of their incompetence; and it may be inferred (if indeed it is not distinctly proved) that the storing of the timber required skill and experience. The testimony of Corcoran also shows that though he was in charge of the men engaged in placing the lumber, he was required to go in and help do the work.

There can be no question under the evidence that the com-

pany was responsible for the acts of Graham. Under the undisputed testimony, Graham knew that the men with whom Corcoran was put to labor were green men. Some of them perhaps had never seen a ship before. Graham further testified that all hands were supposed to go in and do the work in rushes, and that he told Corcoran to give him a helping hand. A workman, although he may have direction of the labor performed, is not a vice-principal of the master, but stands on the same footing of a mere fellow-servant. It was the duty of Graham to inform the plaintiff that the men with whom he was to labor, especially those who had never seen a ship before, were green men. The fact that Corcoran testified that he knew that there was a strike, and that the regular force of hands were away, would not necessarily impute to him knowledge that the servants employed to take their places were, unskilled or incompetent. That inference might arise from the testimony; but as the Civil Code, §2611, requires the master to exercise ordinary care in the selection of his servants, and not to retain them after knowledge of incompetency, a jury would have just as good right to infer, from the testimony, that Corcoran rightly presumed that the company had discharged the duty to which it was bound; especially in view of the fact that Graham, who was in charge for the company, did not tell him of the unskilfulness or inexperience of the fellow-servants with whom he was to labor. "The acts of a person authorized by the master to perform a duty which the master owes to his servant, in so far as they pertain to that duty, are the acts of the master himself; and when the servant is injured by reason of a failure to perform it, the master can not escape liability by setting up that the duty devolved upon a fellow-servant of the person injured." *Cheeney* v. *Ocean Steamship Co.,* 92 *Ga.* 730. We think that a jury would be authorized to find, from the evidence submitted, that Graham, in charge of the work to be performed, stood, as it were, in the shoes of the master. The company was responsible for his acts and his omissions of duty. He knew the men were incompetent, and yet retained them after knowledge of their incompetency. He had a better opportunity of knowing of their incompetency than the plaintiff (for up to the time of the accident nothing had developed which

could give the plaintiff information upon the subject, while it was the duty of Graham to be informed that they were competent before he employed them); he put the plaintiff to work as a fellow-servant with these green hands at a labor involving skill and danger, without notifying him of the incompetency of his fellow-servants; and though it may be doubtful as to whether the plaintiff was injured by reason of his own negligence, or the incompetency of his fellow-servants, that too is a question for the jury.

While a servant is not ordinarily entitled to damages resulting from injuries caused by the mere negligence of a competent fellow-servant, he is entitled to damages occasioned by the carelessness and negligence of an incompetent and unskilful fellow-servant, if such carelessness or negligence was solely due to or arose from the latter's incompetency or unskilfulness, and if, in employing him or retaining him in his service, the master failed to exercise ordinary care, and the injured servant did not know and had not equal means of knowing, or could not, by the exercise of such care on his part, have ascertained the fact that his fellow-servant was incompetent, and therefore likely to perform his duties in an unskilful and negligent manner. In other words, the liability of the master arises because of his omission of duty to provide the injured employee with a competent fellow-servant; not because the negligence of the latter is, in law, imputable to the master. *Ingram* v. *Lumber Co.,* 108 *Ga.* 194.

There may be doubt as to which inference should be drawn from the testimony as to two or three vital points in the case. These doubts are to be resolved by the jury; and although the solution reached might possibly be correct, it was error to withdraw from the jury the consideration and solution of all doubts which could reasonably arise from the evidence. "Nonsuit is a process of legal mechanics; the case is chopped off. Only in a clear, gross case is this mechanical treatment proper. Where there is *any* doubt, another method is to be used—a method involving a sort of mental chemistry; and the chemists of the law are the jury. They are supposed to be able to examine every molecule of the evidence, and to feel every shock and tremor of its probative force." *Vickers* v. *Atlanta & W. P. R. Co.,* 64 *Ga.* 307.        *Judgment reversed.*