## 6100.   ROBERTSON et al. v. SMITH.

1. A sheriff's bond is obligatory on the principals and sureties thereof for any breach of the condition by a deputy, although not expressed, unless otherwise declared by law, and for the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by failure to perform, or by the improper or neglectful performance of those duties imposed by law. Civil Code, § 291.
2. No preliminary recovery against the sheriff is required, to entitle the injured party to sue on the bond. Jefferson v. Hartley, 81, Ga. 716 (9 S. E. 174).
3. The petition as amended set forth a cause of action, and the general demurrer thereto was properly overruled.

                        DECIDED JULY 31, 1915.

Action on bond; from city court of Macon—Judge Hodges. October 5, 1914.

John P. Ross, Miller & Jones, Walter Miller, for plaintiffs.
Johnson & Johnson, J. E. Hall, for defendants.

BROYLES, J. It appears from the record that in rendering the judgment overruling the demurrer to the petition in this case, Judge Robert Hodges of the city court of Macon delivered an opinion. That opinion, quoted below, so exactly expresses the views of this court upon the issues involved that we adopt it as our opinion.

"On a former trial of this case the sheriff and the surety on the sheriff's bond interposed a demurrer to the original petition, which was overruled, and, on exceptions by the sheriff and the sureties, the judgment overruling the demurrer was reversed. In the opinion

reversing the judgment overruling the demurrer the Court of Appeals, per Pottle, J., says: 'If the petition had alleged that the deputy, while acting under the color of his office and while attempting in his official capacity to arrest the plaintiff's husband, or while engaged in the performance of any other official duty, wrongfully killed the deceased, a case might have been stated.' *Robertson* v. *Smith,* ante, 760 (85 S. E. 988). On motion to make the remittitur the judgment of the trial court the plaintiffs offered an amendment, alleging in substance that a communication was received at the sheriff's office that certain negroes had shot at a child in the eastern part of the county; that thereupon the sheriff collected certain deputies, including Norton, to go to the scene of the alleged shooting and arrest the parties charged with the offense; that Norton and the other deputies, in executing this order, stopped a certain wagon on the road and arrested the negroes therein. After this was done some one pointed to a wagon in which Smith was riding and said, 'There go the rest of them;' whereupon Norton pursued Smith and assaulted him. The amendment further alleges that Norton attempted to arrest Smith, and shot him, conveyed him to jail, and declined to enlarge him to go to the hospital to receive treatment for his wound from which he subsequently died. The amendment concludes that, 'in so acting, the said W. B. Norton thought or pretended to think that the said R. V. Smith was one of the persons who had committed the alleged offense, and in so doing the said William B. Norton was acting under color of his office as deputy sheriff.' The amendment was allowed and the defendants renewed their demurrers to the petition as amended.

"Taking the allegations of the petition and amendment as true, the principal in the bond, the sheriff, acted both virtute officii and colore officii. He received the message as conservator of the peace virtute officii. His order to his deputies to arrest the persons charged with the offense was given colore officii; for he had no warrant, no crime had been committed in his presence, and, so far as he knew personally, the persons charged with the offense were not endeavoring to escape. He received the message and acted upon it not as an individual. On the contrary, he acted upon it officially, through his deputies. This order was so given 'under pretense of official right to do an act, made by one who has no such right.' Norton, in pursuance of the order of his chief, arrested certain ne-

groes on the road. Clearly this arrest was a trespass by the deputy colore officii, for which the sheriff and his surety would be liable. In pursuance of the information, 'There go the rest of them,' Norton followed a wagon in which Smith was riding, and, thinking or pretending to think that Smith was one of the parties charged, shot him, arrested him, and imprisoned him in the county jail. It is alleged that Norton refused to enlarge. Smith for medical treatment, and that he subsequently died from his wound. The arrest of the negroes was a trespass by Norton, made in pursuance of the [sheriff's] order to 'arrest the persons who were charged with having done the shooting.' Norton arrested Smith in pursuance of a statement by some one,—'There go the rest of them.' His conduct in this regard was in accordance with the instructions of the sheriff. He received the information, 'There go the rest of them,' as a deputy sheriff, and he acted on it as a deputy sheriff. Upon this information he arrested Smith, imprisoned him, and declined to enlarge him. The sheriff and his deputies have control of the jail. Norton arrested and imprisoned the wounded man as deputy sheriff colore officii. He declined to enlarge him as jailer and deputy sheriff. He acted on the sheriff's orders as deputy sheriff, arrested the negroes as deputy sheriff, arrested Smith when charged with the alleged offense, put him in jail, and declined to enlarge him as deputy sheriff. If the arrest and detention of Smith in the jail were acts *colore officii,* it must follow that the shooting of Smith, which was an incident to the arrest, was equally so, and Smith's homicide was the consequence of an act done under pretense of official right when no such right existed.

"Actions of this character against sureties are divided into three classes: (1) acts done by the principal virtute officii, (2) acts done by the principal colore officii, and (3) acts done by the principal in an individual and personal capacity. For acts covered by the first two classes the surety is liable in this State. For acts arising under the last division the surety is not liable. An officer's acts are done colore officii when they are of such a nature that his official position does not authorize the doing of such acts though they are done in a form that purports they are done by reason of official duty and by virtue of his office. The test of liability in all cases of this character is found in the answer to the query: Did the principal act in an individual capacity? If he did, the surety

is not liable; *aliter*, if he did not so act. So in this case the question is: Did Norton act by reason of the fact that he was a deputy sheriff? The answer must be in the affirmative, for the first act in the tragedy alleged is an order given to and received by him as deputy sheriff, and throughout the entire transaction no inference or deduction can be drawn from the pleadings that he ever did other than act as deputy colore officii.

"If the decision reversing the judgment overruling the demurrer to the original petition be sound in principle, the objection therein made to the original petition seems to have been met by the amendment offered, and the demurrer to the petition, as amended, must be overruled."

In Lammon *v.* Feusier, 111 U. S. 17 (4 Sup. Ct. 286, 28 L. ed. 337), the Supreme Court of the United States held that a United States marshal was liable upon his bond for seizing the property of one person upon a writ of attachment issued against the property of another. It is insisted, however, by counsel for plaintiff in error that that case is distinguished from the instant one by reason of the fact that in the former the unauthorized act of the officer was committed while proceeding under a valid writ and by virtue of a mandate of law. In our opinion this distinction is immaterial, for in the case at bar it was the duty of the sheriff to seek out and arrest the persons who had shot at the child, and he improperly and negligently performed this duty by sending out an intoxicated deputy, without a warrant, to make the arrest. See, in this connection, Lowell *v.* Parker, 10 Met. (Mass.) 309 (43 Am. D. 436); Johnson *v.* Williams, 111 Ky. 289 (63 S. W. 759, 54 L. R. A. 220, 98 Am. St. R. 416). While counsel for the plaintiffs in error have cited some decisions from other States which seem in conflict with the ruling here, our view is sustained by the weight of authority in this State and elsewhere.                     *Judgment affirmed.*