16958.  FIDELITY AND DEPOSIT COMPANY OF
MARYLAND *v.* SMITH.

1. A tax-collector, having no authority of law whatever to make levies and sales under tax fi. fas., issued a fi. fa. purporting to be for taxes due, and placed it in the hands of another as his deputy, who, "armed" with the fi. fa. and acting under the instructions of the tax-collector, seized

property of the alleged taxpayer and sold it, to the owner's damage. *Held:* Such acts constituted no breach of the tax-collector's bond and the surety on the bond was not liable therefor.

2. In this action on a tax-collector's bond, where the facts alleged and relied on to show liability were as above indicated, the petition failed to state a cause of action, and the court erred in not sustaining the general demurrer thereto.

DECIDED SEPTEMBER 20, 1926.

Action upon bond; from city court of Nashville—E. D. Rivers, judge pro hac vice. October 20, 1925.

*Little, Powell, Smith & Goldstein,* for plaintiff in error.

*Jeff S. Story, E. H. Griner,* contra.

BELL, J. J. C. Smith brought suit against the surety on the bond of S. B. Griner as tax-collector of Berrien county. Griner was not a party to the suit, the petition alleging that he had removed to another State. A general demurrer to the action was overruled and the defendant excepted. The petition made the following case: Griner was tax-collector of Berrien county in the early part of 1922, and the Fidelity & Deposit Company of Maryland was surety on his bond. The tax-collector issued a fi. fa., purporting to be for taxes due by J. C. Smith, and delivered it to his deputy, J. H. Giddens. No taxes were due by Smith, and at his instance the enforcement of the fi. fa. was enjoined by the superior court. Notwithstanding the injunction, Giddens proceeded to the plaintiff's office, and "armed with said fi. fa. . . and without advertising, and without bringing said property to the court-house door, and in direct disobedience to said injunction heretofore referred to, and under the instructions of S. B. Griner and contrary to law, . . sold to the highest bidder for cash (there being only two or three present at the sale) all of the property located in the office [of] your petitioner." The plaintiff's property which was thus made way with was itemized and alleged to be of the value of $1152.80. Included in the sale was the plaintiff's filing cabinets, containing valuable papers belonging to the plaintiff and various clients, and "said J. Howell Giddens, as deputy tax-collector, acting under the advice and instructions of S. B. Griner, tax-collector, took all of said property and scattered them to the four winds of the world," to plaintiff's damage in the further sum of $1,000. The acts on the part of Griner "personally and by and through his deputy," Giddens, con-

stituted a breach of the bond and entitled the plaintiff to recover the full sum of $2152.80, besides interest, etc.

In counties having a population of 125,000 or more the tax-collectors are ex officio sheriffs to the extent of having authority to make levies and sales under tax fi. fas. Civil Code (1910); § 1225, as amended August 14, 1915, p. 11. Where an act of the legislature is effective only in counties of a certain population, the courts will take judicial cognizance that a given county has or has not the required population, as the case may be, for the purpose of determining whether the act is applicable therein. Leadbetter *v.* Price, 102 Ore. 159 (199 Pac. 633, 17 A. L. R. 218); Standard Oil Co. *v.* City of Kearney, 106 Neb. 558 (18 A. L. R. 95, 184 N. W. 109); 15 R. C. L. 1129. Berrien county has a population of less than 125,000. The tax-collector, then, had no authority to levy the fi. fa. *Hill* v. *Ga. State Building Asso.*, 120 *Ga.* 472 (47 S. E. 897); *Laurens County* v. *Citizens Bank of Valdosta*, 9 *Ga. App.* 662 (72 S. E. 67). The plaintiff in error says, furthermore, that the tax-collector of Berrien county had no authority to appoint a deputy. Civil Code (1910), §§ 294, 225, 1227. We think it is unnecessary to decide this question. In our view of the case we may assume that Giddens was a duly and lawfully appointed deputy. Under this assumption, the action on the principal officer's bond will stand as if the acts complained of had been committed by that officer himself. Civil Code (1910), § 295. Giddens, therefore, may be eliminated. We now have the following case: The tax-collector had in hand a fi. fa. issued by him purporting to be for taxes due; however, the taxes were not due, and the enforcement of the fi. fa. had been enjoined. The tax-collector, nevertheless, armed himself with the fi. fa. and proceeded thereunder to seize and sell the property of the alleged taxpayer, without advertising the sale and without carrying the property to the court-house door or otherwise complying with the forms of the law, to the owner's damage. Do such acts constitute a breach of the bond?

To render sureties on official bonds liable for misconduct of the principal, the acts complained of must be done either by virtue of his office or under color of his office. In some jurisdictions the courts draw a distinction between acts virtute officii and those done colore officii, and hold the sureties liable for acts of the

former class only. It is a broader rule which fixes liability for acts of the latter class, since it is cumulative and adds a liability to that which exists under the other doctrine. Where sureties are liable for wrongful acts of the latter class, they are liable for wrongful acts of both classes. They can not be held liable anywhere if the acts complained of belong to neither class.

The rule of liability for wrongful acts committed by virtue of office is of common-law origin and does not embrace acts done merely under color of office. Coleman v. Roberts, 113 Ala. 323 (36 L. R. A. 84, 21 So. 449, 59 Am. St. R. 111). But the common law has been changed in some way in Georgia so as to render sureties on official bonds liable for (a) "any wrongful act committed [by the principal] under color of his office," as well as for (b) "his failure to perform or . . . the improper or neglectful performance of those duties imposed by law." Civil Code (1910), § 291 (4). The portion of this section which we have designated as (b) indicates the causes for which sureties would have been liable at common law, while that which is quoted as (a) represents the extent by which the rule has been enlarged in this State.

Undoubtedly, the acts complained of in this case could not have been done by virtue of office, because the tax-collector had no power to make a levy and sale under the fi. fa. So it is necessary to determine whether such acts were committed under color of office. What is the meaning of the phrase, "color of office?" Black's Law Dictionary gives the following definition: "A claim or assumption to do an act by virtue of an office, made by a person who is legally destitute of any such right." In State of Maryland v. Fowler, 88 Md. 601 (42 L. R. A. 849, 42 Atl. 201, 71 Am. St. R. 452), the court, in discussing the difference between wrongful acts of an officer done virtute officii and those done colore officii, follows the distinction drawn by Lord Kenyon in the ancient case of Alcock v. Andrews, 2 Esp. 542, and restates the rule as follows: "The former are where a man doing an act within the limits of his official authority exercises that authority improperly, or abuses the discretion placed in him. The latter are where the act committed is of such a nature that the office gives him no authority to do it." In Feller v. Gates, 40 Ore. 543 (56 L. R. A. 631, 67 Pac. 416, 91 Am. St. R. 492), the court adopts the following definitions as stated in Mr. Justice Pratt's

·dissent in Kellogg *v.* Schuyler, 4 N. Y. 173: "Acts done virtute officii are where they are within the authority of the officer, but in doing it he exercises that authority improperly, or abuses the ·confidence which the law reposes in him, whilst acts done colore officii are where they are of such nature that his office gives him no authority to do them." In *Luther* v. *Banks,* 111 *Ga.* 374 (36 ·S. E. 826), the Supreme Court of this State approved the definition by Bouvier, that color of office is "a pretense of official right to do an act, made by one who has no such right." While the tax-collector in the present case was an officer and had in his hands a tax fi. fa., and proceeded to execute it as though authorized, we ·think there was nothing upon which he could hoist even a pretense ·of official authority in doing so. His conduct was a mere usurpation, where he had no authority to act at all in the matter. Where ·an officer commits a wrong under circumstances in which the law ·imposes no duty upon him to act at all, the wrong is personal and not a breach of the official bond. State ex rel. Brennan *v.* Dier-·ker, 101 Mo. App. 636 (74 S. W. 153); Chandler *v.* Rutherford, 101 Fed. 774 (43 C. C. A. 218); Hawkins *v.* Thomas, 3 Ind. App. 399 (29 N. E. 157); State *v.* Mankin, 68 W. Va. 772 (70 S. E. 764). In the Dierker case, supra, it was said that "It is only such acts of a sheriff as are done under color of office, involving ·an abuse, as distinguished from a usurpation, of authority, that ·render his bondsmen liable." As to levying tax fi. fas. under any circumstances, the power of the tax-collector of Berrien county ·registers at zero. There can be no color of authority without some *semblance of authority.* Even color is more than nothing, and a ·mere blank or vacuum is not a pretense. In *Robertson* v. *Smith,* 16 *Ga. App.* 760 (85 S. E. 988), this court held: "Suit can not be maintained upon a sheriff's bond for an unlawful homicide committed by a deputy sheriff, unless the wrongful act was done in the prosecution of some official duty." The defendant in error relies on the decision rendered in the same case when it was here a second time (*Robertson* v. *Smith,* 16 *Ga. App.* 767, 85 S. E. 991), and when this court approved the following language of the trial court: "An officer's acts are done colore officii when they are of such nature that his official position does not authorize the doing of such acts though they are done in a form that purports they are done by reason of official duty and by virtue of his office.

The test of liability in all cases of this character is found in the answer to the query: Did the principal act in an individual capacity? If he did, the surety is not liable, aliter, if he did not so act." But in that case the officer did have authority to make arrests, and the circumstances gave ground at least for a pretense of authority to do the act complained of. This is true also of the case of *Mitchell* v. *Malone, 77 Ga.* 301. The acts described and set forth in the present case could not be said to have been done under color of office. The petition, therefore, failed to set forth a cause of action and the court erred in overruling the general demurrer. See further, in this connection, *Board of Education of Miller County* v. *Fudge, 4 Ga. App.* 637 (62 S. E. 154).

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*