CITIZENS BANK OF COLQUITT *v.* AMERICAN SURETY COMPANY OF NEW YORK.

No. 8692.   APRIL 14, 1932.   REHEARING DENIED JUNE 20, 1932.

*H. A. Wilkinson* and *N. L. Stapleton,* for plaintiff.

*Martin, Martin, Snow & Gillen,* for defendant.

HINES, J.   This case is in this court upon the grant of the writ of certiorari to review the judgment of the Court of Appeals in *American Surety Co.* v. *Citizens Bank,* 44 *Ga. App.* 57 (160 S. E. 546).   This bank brought suit against Otto Benton as principal, and the American Surety Company of New York as surety, upon the official bond of Benton as county school superintendent of said

county. In its petition the plaintiff makes this case: On January 6, 1925, and at all times hereinafter stated, Benton was the duly elected, qualified, and acting county superintendent of schools for such county. He as principal, and said company as surety, executed his official bond as such officer, as required by law, in the sum of $10,000. The condition of this bond was that Benton would "faithfully discharge all and singular the duties required of him by virtue of his said office." On or about March 6, 1928, the superintendent procured from the bank a school loan in the principal sum of $5,000, evidenced by a promissory note of said date, due December 31, 1928, with interest from date at 8 per cent. This note purported to be properly executed as required by law, and was accompanied by a certified copy of a resolution purporting to be that of the county board of education, which was in due form and in legal terms, and authorized the loan. Benton represented that said resolution had been passed by the county board of education and entered upon the minutes of the board. He as county school superintendent of said county certified this as a true and correct copy of the resolution so entered upon the minutes of the board of education. Said loan, upon the representation so made by the superintendent, was approved by the bank, and its cashier's check for the amount thereof, payable to the Seminole County Board of Education, was delivered to said superintendent. Benton was then the treasurer of the county board of education, the custodian of its funds, and the proper officer to receive its funds. Said check was indorsed in the name of the county board of education by Benton in his official capacity as superintendent, and the proceeds thereof were received by him in that capacity. The sum of $500 was paid on said note, and the payment of the balance thereof was extended by note to March 1, 1929. This extension was made upon the same representations, facts, and circumstances as the original loan. The bank acted in good faith, relying upon Benton's representations as such officer. All of said representations were false and fraudulent, and the funds thus procured by Benton were appropriated to his own use and not used for the benefit of the county school board. Benton was by virtue of his office secretary of the county board of education, the custodian of its minutes, and the only officer authorized by law to certify the same. He was the custodian of the funds of said board, the only officer authorized to indorse checks,

receive and hold the same, the only officer required by law to sign its notes and procure school loans; and in this matter he acted solely in his official capacity. The bank's funds were so procured by him while acting in his official capacity and under color of and in the name of his office. The resolution authorizing said loan, and the signature of J. T. Goree, as president of the county board of education, to the note given for said loan, were forged by Benton. Petitioner prayed for judgment for the loss sustained by it, the balance due on the principal of said note of $4,500, interest thereon at 8 per cent. from March 1, 1929, $1,000 attorney's fees expended in this behalf, and $200 costs.

The surety company demurred upon the grounds: (1) The petition sets forth no cause of action. (2) It is insufficient as a matter of law against the surety. (3) The plaintiff is not a proper party to maintain the suit. (4) Plaintiff can not maintain an action on the bond. (5) Benton was not discharging the duties of his office in the execution of the note and in borrowing the money from plaintiff. (6) The resolution and the note executed by Benton, to which the name of J. T. Goree, president, was signed, is a forgery; and whatever loss the plaintiff sustained, if any, was by reason of its own negligence. (7) The law under which said bond was given contains no provision as to the condition of the bond of the officer, and is for that reason null and void, and the bond given under said law is null and void. The defendant demurred specially upon various grounds. The judge overruled the demurrer, and the surety company excepted. The Court of Appeals held that the judge erred in overruling the demurrer. The plaintiff in the petition for certiorari excepts on the ground that this judgment of the Court of Appeals is contrary to law. Plaintiff specifically excepts to the holding of that court that "A bank, when dealing with a county superintendent of schools and making a loan to the county board of education through him as the board's agent to negotiate the loan, was chargeable with notice of the fact that the county board of education had not, by resolution as required by law, authorized the loan, and that therefore any representations made by the county superintendent of schools to the bank with reference to his authority to make the loan and receive the money were not true, and that a certificate signed by the county superintendent of schools as secretary of the county board of education, certifying to the pas-

sage of the resolution by the board, authorizing him to obtain an advancement of money for and in behalf of the board," whereby he obtained said funds, would not render his surety on said bond liable for the funds so procured upon said loan, and which became a loss to the bank. To this holding plaintiff excepts upon the ground that it is contrary to law, and that the Court of Appeals erred in said holding, in that said ruling ignores the fact that the county superintendent of schools is by law the secretary, treasurer, and executive officer of the county board of education, and that, if the bank had wished to make an investigation as to whether or not the board of education in fact passed a resolution authorizing the loan, the superintendent was the proper officer to whom the bank would have to go to make such inquiry, and, had it done so, it would necessarily have had to go to the office of the superintendent to examine the records of the board, and that should the superintendent in such event have submitted to the bank a forged or altered minute book showing the adoption by the board of a resolution authorizing such loan, the bank would have been fully justified in proceeding to act upon the information thus furnished by the secretary and executive officer of the county board of education, and the bank would have had just as much right to act on the certificate of the superintendent certifying that such resolution had been passed by the board as it would have to rely upon the original minutes kept by the superintendent.

Petitioner further excepts to the holding of the Court of Appeals that "where the county superintendent of schools appropriated to his own use the money thus obtained, and the county board of education incurred no legal liability to the bank for the money, and the bank thereby sustained a loss, the loss to the bank was not due to the conduct of the superintendent of schools in making misrepresentations to the bank, but was due to the act of the bank in parting with the money without ascertaining, or without taking notice of, the lack of authority in the county superintendent of schools from the county board of education to negotiate the loan and to receive the money for and in behalf of the board. . . It is therefore immaterial whether the acts of the county superintendent of schools, in making the false representations to the bank and in obtaining from the bank the money for and in behalf of the county board of education, were done by virtue of the office of the superintendent

of schools or under color thereof." Petitioner assigns error upon this ruling, upon the ground that it is contrary to law, that the Court of Appeals in making this ruling wholly disregarded the allegations contained in the fifth paragraph of plaintiff's petition wherein it is alleged that the bank, after receiving said loan, issued its cashier's check therefor payable to the order of the county board of education, which check was delivered to the superintendent, and was indorsed by the county board of education by said county school superintendent, who collected the proceeds of the same, and that the bank, knowing that Benton was the county school superintendent, was fully authorized to rely on the fact that the name of the county board of education would not be indorsed on such check, except by the officer authorized by law to make such indorsement, that when said indorsement was made by the county superintendent of schools and the money paid to him, the same was done by said superintendent by virtue of his office and under color thereof, and the surety on his official bond was liable if said superintendent appropriated the proceeds of the check to his own use, and that the loss of the bank in said matter was directly due both to the false certificate of the superintendent and to his act in indorsing the name of the county board of education on said check, in collecting the same and in misappropriating the proceeds.

Petitioner further excepts to the holding of the Court of Appeals that "In a suit by the bank to recover for the loss sustained, brought against the surety upon the official bond of the county superintendent of schools, which was conditioned upon the faithful discharge of 'all and singular the duties required of him by virtue of his said office,' the petition failed to set out a cause of action, and the court erred in overruling the demurrer thereto." Petitioner assigns error upon this ruling on the ground that it is contrary to law. Petitioner further excepts to the holding of the Court of Appeals that "It is therefore immaterial whether the acts of the county superintendent of schools, in making the false representations to the bank and in obtaining from the bank the money for and in behalf of the county board of education, were done by virtue of the office of the superintendent of schools or under color thereof," and says that said ruling is contrary to law. Petitioner further excepts to the judgment of the Court of Appeals upon the ground that the court misinterpreted the decision of this court in the case of *Citizens Bank* v.

*Seminole County Board of Education,* 170 *Ga.* 654 (153 S. E. 768), in which this court held that the bank had no right of action in the suit brought by it against the Seminole County Board of Education, upon the ground that the issues in the two cases are entirely different.

■ Before dealing with the decision of the Court of Appeals and the assignments of error on the rulings therein made, we will first consider the contention of counsel for the surety company that there is a vital reason, which the Court of Appeals ignored, for reversing the judgment of the trial judge. This contention is that the statute which requires county superintendents of schools to give bond does not provide for any condition, and that therefore it is void, or at least only a voluntary or common-law undertaking on which only the obligee in the bond could sue, and is not a statutory bond upon which any other person who might be injured by the conduct of the county superintendent of schools could bring an action. *Mayor &c. of Brunswick* v. *Harvey,* 114 *Ga.* 733 (40 S. E. 754). This contention is without merit. It is true that the statute requiring this bond does not prescribe any condition for the violation of which the principal and the surety thereon would become liable. Acts 1919, pp. 288, 350; 8 Park's Code, § 1440(e). There is, however, a statute which prescribes and requires that all official bonds must be "conditioned, in all cases in which a different condition is not prescribed, faithfully to discharge the duties of such office during the time he continues therein or discharges any of the duties thereof." Civil Code (1910), § 278. The bond of the county school superintendent is an official bond; and there being nothing in the law requiring it which prescribes a different condition, it was properly conditioned faithfully to discharge the duties of this office. In view of this provision of the code, this bond can not be held to be a voluntary or common-law bond, but it is a statutory bond upon which, as we shall undertake later to show, any person who has been injured and damaged by the improper conduct or malfeasance of the superintendent of schools committed under color of his office can bring suit.

■ This brings us to consider the vital and controlling question in this case; and that is, whether the petition makes a case of liability on the part of the surety to the bank. Our able and learned brethren of the Court of Appeals put its decision upon a theory of

the case which, in our opinion, is not tenable. The bank was not undertaking to collect from the county superintendent of schools and the surety upon his bond damages for the conversion and embezzlement of the funds obtained by that officer from the bank as funds belonging to the county. If that were the purpose of the suit, the petition would set forth no cause of action, and the Court of Appeals would have been right in holding that the demurrer should have been sustained. So we held in *Citizens Bank of Colquitt* v. *Seminole County Board of Education*, supra, a case dealing with this same transaction, that where this superintendent had without authority and fraudulently undertaken to borrow money in the name of the county board, the lender could not by mandamus compel the county board of education to pay for the money so borrowed, upon the principle that the county board of education would not be bound by a contract made in its name by this superintendent, though within the scope of his powers, if this officer had no authority to enter into such a contract on behalf of the board. The present action was brought by the bank against this officer and his surety on his official bond upon a different theory, for injury and damage sustained by the bank by reason of illegal acts committed by him under color of his office.

Every official bond is obligatory upon the principal and surety thereon, "for the use and benefit of any person who is injured, as well by a wrongful act committed under color of his office as by his failure to perform, or by the improper or neglectful performance of those duties imposed by law." Civil Code (1910), § 291, par. 4. This statute, which was in existence at the time of the execution and delivery of the official bond with which we are dealing, became an integral part thereof. Catts *v.* Winburn, 81 Fla. 756 (88 So. 918) ; Pocatello *v.* Fargo, 41 Idaho, 432 (243 Pac. 297) ; Chicago *v.* Southern Surety Co., 239 Ill. App. 628; St. Louis *v.* Sickles, 52 Mo. 122; U. S. Fidelity &c. Co. *v.* Com., 20 Pa. Dist. 572; State *v.* McGuire, 46 W. Va. 228 (33 S. E. 812, 76 Am. St. R. 822) ; State *v.* Nutter, 44 W. Va. 385 (30 S. E. 67). This view is strengthened when we reflect that the statute requiring the bond does not specify its conditions. State *v.* McGuire, supra. Sureties are chargeable with knowledge of the law, and of having executed official bonds with reference to the law. A statute providing that official bonds shall be for the benefit of persons injured by

the principals must be read with the conditions of such bonds obligating the officials well and truly to perform the duties of such office, and refers to such liabilities as arise within the fair intendment of the obligation itself. McPhee *v.* U. S. Fidelity &c. Co., 52 Wash. 154 (100 Pac. 174, 21 L. R. A. (N. S.) 535, 132 Am. St. R. 958). The law in force at the time of the execution of the bond, giving it a certain legal effect, is part of the bond. State *v.* McGuire, supra. If a person has been injured and suffered damage from the consequence of any wrongful act committed by an officer under color of his office, he can sue such officer personally or upon his official bond, and recover the amount of the damage sustained. *Markham* v. *Ross,* 73 *Ga.* 105; *Luther* v. *Banks,* 111 *Ga.* 374 (36 S. E. 826). "An officer's acts are done colore officii when they are of such a nature that his official position does not authorize the doing of such acts, though they are done in a form that purports they are done by reason of official duty and by virtue of his office." *Robertson* v. *Smith,* 16 *Ga. App.* 767, 769 (85 S. E. 991). Color of office is "a pretense of official right to do an act, made by one who has no such right." *Luther* v. *Banks,* supra.

Was the bank in this case injured by any wrongful act of the county superintendent of schools committed under color of his office, or by the improper performance of duties imposed on him by law and owing by him to the bank? Whenever the county board of education adopts a resolution authorizing the borrowing of money, such "resolution shall be by the county school superintendent recorded upon the minutes of said board." Acts 1919, pp. 288, 328. After such resolution has been passed by the county board of education, the president of the board, together with the county school superintendent, shall have the right to execute a note or notes, in the name of the board of education, for any money that is authorized to be borrowed under such resolution. Acts 1919, pp. 288, 329. When any money shall be borrowed under the provisions of the above law, the same shall be paid over to the county school superintendent and become a part of the public-school fund of the county, and the same shall be paid out by him to the teachers of the county, and he shall be responsible for money borrowed under the authority of this law and paid into his hands, in the same way and to the same extent that he is responsible for any other public-school funds coming into his hands. Id. When any

money is borrowed under this law, it is paid to the county school superintendent and paid out by him to the teachers of the county. He is the keeper of the records and minutes of the county board of education. The certification by the county superintendent of schools of any record, document, paper of file, or other matter or thing in his office, or pertaining thereto, gives sufficient validity or authenticity to any copy or transcript thereof to admit the same in evidence in any court of this State. Civil Code (1910), § 5798. The superintendent in this case presented to the bank, for the purpose of obtaining a loan to the county board of education, a certified copy of what purported to be a resolution of that board authorizing him to borrow this money. He produced and gave to the bank a note purporting to be a genuine note of the county board of education, and purporting to be signed by the president of the board and actually signed by the superintendent as secretary of the board. On the strength of this certified copy of the resolution authorizing the loan, and upon the strength of this note of the board of education so signed, the bank made the loan and gave to the superintendent therefor its cashier's check, payable to the board of education. The board of education had not adopted a resolution authorizing this loan to be procured. The certification thereof by the superintendent was false and fraudulent. The signature of the president of the board to the note given for this loan was forged by the superintendent. He indorsed the cashier's check made payable to the order of the county board of education, and got the money thereon. He then appropriated the funds derived from this loan to his own use. He did not apply the same or any part thereof to the payment of the teachers of the county for whose benefit the loan was made. All of these acts of the superintendent were done under color of his office. He certified the resolution of the county board of education, which purported to authorize the loan, in his official capacity. He executed the note of the county board of education, signed as above, in his official capacity. He received from the bank its cashier's check for the money borrowed, made payable to the county board of education, then indorsed the same as the secretary and treasurer of the board, and got the money, in his official capacity. His only personal act in the matter was the fraudulent appropriation of these funds to his own use.

In these circumstances the superintendent got these funds under

improper acts committed under color of his office, and by improper performance of the duties imposed upon him by law. His bond was given not only to protect the county board of education against his improper and neglectful performance of the duties imposed upon him by law, but for the use and benefit of any person who might be injured by any improper act done by him under color of his office, or by the improper performance of the duties imposed upon him by law, due both to the county board of education and to persons having dealings with such board and himself in his official capacity. So we are of the opinion that the official bond of this county superintendent of schools became and is liable to the bank for the injury sustained by it by the false, fraudulent, and improper acts committed by this officer in getting this money from the bank under color of his office. There is no pretense that the bank knew of the false and fraudulent acts by which the superintendent got these funds, nor can it be set up by the surety as a matter of defense that the bank did not exercise due care in not discovering the fraud and forgery of the officer. Want of due care is no defense to the willful misconduct of the officer for the faithful performance of whose duties the surety obligated itself. It follows that in our opinion the petition set forth a good cause of action; and that the Court of Appeals erred in reversing the judgment of the trial judge holding that the petition set forth a good cause of action against the surety on the superintendent's bond. The case is therefore remanded to the Court of Appeals for further action in accordance with this opinion.

*Judgment reversed. All the Justices concur, except*

BECK, P. J., and ATKINSON, J., who dissent, being of the opinion that the Court of Appeals correctly construed the law applicable to the facts of this case, and therefore that the judgment should be affirmed.