## 28441. HAWKINS *v.* NATIONAL SURETY CORPORATION *et al.*

Decided October 16, 1940.

*Hamilton Kimzey, Herbert B. Kimzey,* for plaintiff.

*J. E. Frankum, Kelley & Brannon,* for defendants.

SUTTON, J. Mrs. Ida Hawkins brought an action against I. L. Lawson and National Surety Corporation as surety on his bond as sheriff of Hall County, Georgia, to recover damages for the homicide of her husband by two of his deputies. The petition alleged, that I. L. Lawson was the duly elected sheriff of Hall County, Georgia, and as such gave an official bond on which the defendant corporation, as successor to National Surety Company, was surety; that acting under color of and by virtue of his office as sheriff he appointed Lee Land and J. C. Smith deputy sheriffs, and they were so acting at the time of the wrong complained of; that on November 17, 1935, deputy sheriff J. C. Smith, acting under color of his office and by virtue of his office as deputy sheriff of Hall County, Georgia, summoned deputy sheriff Lee Land to go with him to investigate a report as to certain property having been stolen in Hall County, Georgia, to locate the same and to arrest the guilty parties if apprehended; that acting under color of his office and by virtue thereof they drove to Lula, Georgia, and seeing plaintiff's husband in an automobile being driven by their son, Joe Hawkins, followed the car to their house with the intention of searching it for stolen property and liquor and to arrest him if found; that when the car occupied by Jerry Hawkins stopped in the back yard of his home the deputies ran their car with considerable force into the car in which he was riding; that there were

no stolen goods or intoxicating liquor or illegal property in the automobile owned and occupied by him, and neither he nor Joe Hawkins had committed any crime in the officers' presence or otherwise, and they were not trying to escape, and neither of the deputies had any warrant or other legal process directed against Jerry Hawkins or Joe Hawkins or against the automobile occupied by them; that said deputies, acting under color of and by virtue of their office as deputy sheriffs of Hall County, Georgia, attempted to and did illegally search the automobile for intoxicating liquor and stolen property, without any warrant or authority to do so. The petition then alleges, in substance, that the deputies committed an assault upon them, and that J. C. Smith, acting under color of and by virtue of his office, shot Jerry Hawkins in his left breast, and in a few days thereafter he died from his wounds; that her husband was at the time more than sixty-seven years of age, unarmed and crippled, which facts were well known to the deputies at the time they shot and killed him while searching for intoxicating liquors and stolen property, and that the acts complained of were committed by them under color of and by virtue of their office, and constituted a breach of the conditions of the sheriff's bond, a copy of which was attached to the petition and the condition of which was that "should he, the said Irvin L. Lawson, faithfully perform all and singular his duties as sheriff of said county during the term for which he has been elected, by himself, his deputies, or jailors, and upon the terms required by law, then the above bond is to be void; else to be of full force and effect," the bond being signed by I. L. Lawson as principal and National Surety Company as surety. It was alleged that the plaintiff married Jerry Hawkins on November 18, 1891, and lived with him as his wife until his death on November 25, 1935, by reason of the wrongs complained of; that he earned, by means stated, $1400 or more per year, and at the time of the wrongs complained of he was in good health and had a life expectancy of more than ten years, and that the plaintiff had been injured and damaged in the sum of $10,000.

The defendants filed general and special demurrers, which were overruled, and no exception to that ruling was taken. The defendants answered admitting the jurisdiction of the court, but denying liability. They admitted that I. L. Lawson was the duly

elected sheriff of Hall County; that he qualified by giving the bond required by law, which was executed by him as principal and National Surety Company as surety, and that National Surety Corporation, as successor, assumed the liability thereunder; that at the time of the acts complained of J. C. Smith and Lee Land were duly appointed, qualified, and acting deputy sheriffs of Hall County, Georgia, and, on information and belief, alleged that they were called to aid in investigating a robbery which had been committed in Habersham County, Georgia. They admitted that the deputies drove the automobile occupied by them into the yard of Jerry Hawkins after the car occupied by him had entered the yard; that neither of the deputies had a warrant for Jerry Hawkins or Joe Hawkins, but the answer stated that for want of sufficient information the defendants could neither admit nor deny that any crime had been committed by Jerry Hawkins or Joe Hawkins. The defendants set up that Jerry Hawkins attempted to shoot J. C. Smith, that two of his sons sought to shoot and kill the deputies, and that in what the latter did they acted in self-defense and for the protection of their own lives. They denied that the deputies were attempting to search the automobile of Jerry Hawkins. For lack of sufficient information other allegations of the petition were neither admitted nor denied. After introduction of evidence on behalf of the plaintiff, the court, on motion, granted a nonsuit, and the exception is to that judgment, the plaintiff contending that the evidence in support of the petition was sufficient to require that the case be submitted to the jury. The defendants contend that the nonsuit was proper, in that the evidence showed that the deputies were acting as individuals, and not in the prosecution of their official duty.

Without setting out all of the evidence, we think that there was sufficient testimony for the plaintiff, hereinafter referred to, from which the jury, in connection with the admissions of the answer of the defendants, would be authorized to find that at the time of the acts complained of J. C. Smith and Lee Land were acting under color of office as deputy sheriffs, and that in such capacity they inflicted, without legal cause and not in self-defense, wounds upon Jerry Hawkins which brought about his death. It is shown by the record that they followed the car of Jerry Hawkins into his back yard; that an affray ensued, which the jury could find was

produced entirely by the deputies; and that Jerry Hawkins was shot by both the deputies, and died a few days thereafter. These men were at the time duly-appointed deputy sheriffs, and acting as such were engaged in investigating a robbery which had been reported as having occurred in Habersham County. It is admitted that neither of them had any warrant for the arrest of Jerry Hawkins or Joe Hawkins, and there is no evidence that a crime had been committed within their presence. They had not been sent by the sheriff to perform any official act in Habersham County, which was out of his jurisdiction, but there was evidence from which the jury could reasonably infer that without any authority of law they were engaged in an attempt to make an illegal search of the automobile of Jerry Hawkins for intoxicating liquors, and that in pursuance of the plan they forcibly took him from the car and fatally wounded him.

Joe Hawkins, son of Jerry Hawkins and who had been in the driver's seat in the car, testified: "Lee got out of his car. I got out, and he came up and threw his hand back like he was going to get his gun, and I got hold of his arm and asked him not to do that. Then Lee asked me did I have any liquor, and I said 'No.' He said he was going to search us, and I said 'There ain't no use to do that,' and jerked loose and went between our car and their car and in the house. He asked me if I had any liquor. I told him 'No,' and then he said he was going to search us. When he jerked loose from me and threw back his hand like he was going to get his gun I went in the house. I didn't know of any writ or proceedings or warrant that they tried to serve on my father. I could have seen it if they had it. I did not see nothing that was done there by my father in the presence of Lee Land or Mr. Smith in the way of committing a crime in their presence that would authorize them to arrest without a warrant. My father had not committed any crime of any kind in my presence that would give Lee Land or Mr. Smith any authority to arrest him without a warrant up until the shooting began. He had not done anything."

Charley Hawkins, another son, who came from the house when the cars arrived, testified: "My brother had hold of Lee Land, and Smith had a-hold of my daddy, and I went out to pull Smith from my daddy, and I pulled him back, and when I did that Lee had got away from my brother, and I told my daddy, 'Watch

out, Lee Land will shoot you,' and about that time he did shoot and shot him through the left arm, and during that time I pulled Smith away from my daddy. Then I run Lee, and Smith shot me in the side again, and the last shot missed me, and Smith shot me back here in the arm. Smith and my father were up at the front of the cars. Neither my father nor Joe had a pistol or gun of any kind. No one else besides Land and Smith did any shooting there that day. When I got out in the yard, Smith was at the car door on the side where my father was. It looked like Smith was trying to pull my daddy out of the car. They were scuffling, and it looked like he was trying to pull my father out of the car. I saw my father there after the thing was over. They did not have any stolen goods in that car that I know of. I don't think they were trying to prevent any arrest. Nothing that I saw that they did would indicate that."

Thus it appears that while the deputies had no warrant and saw no crime committed in their presence, and had no right to search or arrest Jerry and Joe Hawkins, still the jury would be authorized to find that the deputies in undertaking to search or arrest them were acting under a pretense of official right as officers at the time of the alleged difficulty between these parties. The sheriff's bond, which was in evidence, was in the sum of $10,000, and was in the language of the statute, Code § 89-418. "A failure of a sheriff, by and through his deputy, to faithfully perform the duties of his office, although the act may give rise to a cause of action ex delicto, constitutes a breach of the official bond given by the sheriff for the faithful performance of the duties of the office, as required by section 299 [291] of the Political Code of 1910 [Code of 1933, § 89-418]. A right of action against the surety for the breach of the bond arises ex contractu. *Copeland* v. *Dunehoo*, 36 *Ga. App.* 817 (138 S. E. 267) ; *Powell* v. *Fidelity & Deposit Co.*, 45 *Ga. App.* 88 (163 S. E. 239) ; *Cantrell* v. *National Surety Co.*, 46 *Ga. App.* 202 (167 S. E. 314)." *Powell* v. *Fidelity & Deposit Co.*, 48 *Ga. App.* 529 (173 S. E. 196). Clearly the deputies here had no right, without a warrant, to make a search or an arrest; but nevertheless the sheriff would not be relieved of liability merely because they exceeded their authority, inasmuch as an improper act, done under a pretended or supposed right which does not exist, would as a colore officii act render him liable to any one aggrieved. An

officer's act colore officii is thus defined: "An officer's acts are done colore officii when they are of such a nature that his official position does not authorize the doing of such acts, though they are done in a form that purports they are done by reason of official duty and by virtue of his office." *Richards* v. *American Surety Co.*, 48 *Ga. App.* 102 (2) (171 S. E. 924). Color of office is defined in *Luther* v. *Banks*, 111 *Ga.* 374, 377 (36 S. E. 826), following Bouvier's definition, as "a pretense of official right to do an act, made by one who has no such right." To the same effect see *Citizens Bank* v. *American Surety Co.*, 174 *Ga.* 852, 860 (164 S. E. 817). "Actions of this character against sureties are divided into three classes: (1) acts done by the principal virtute officii; (2) acts done by the principal colore officii, and (3) acts done by the principal in an individual and personal capacity. For acts covered by the first two classes the surety is liable in this State. For acts arising under the last division the surety is not liable. An officer's acts are done colore officii when they are of such a nature that his official position does not authorize the doing of such acts though they are done in a form that purports they are done by reason of official duty and by virtue of his office. The test of liability in all cases of this character is found in the answer to the query: Did the principal act in an individual capacity. If he did, the surety is not liable; aliter, if he did not so act." *Robertson* v. *Smith*, 16 *Ga. App.* 767, 769 (16 S. E. 760).

A motion to nonsuit is in the nature of a demurrer to the evidence, and will never be granted "when there is any evidence tending to sustain the plaintiff's action, or where the jury can fairly infer from the evidence a state of facts favorable to the plaintiff." *Moseley* v. *Patterson*, 27 *Ga. App.* 133, 135 (107 S. E. 623). As stated by Judge Bleckley in *Vickers* v. *Atlanta & West Point R. Co.*, 64 *Ga.* 306, 307: "Nonsuit is a process of legal mechanics; the case is chopped off. Only in a clear, gross case is this mechanical treatment proper. Where there is any doubt another method is to be used—a method involving a sort of mental chemistry; and the chemists of the law are the jury. They are supposed to be able to examine every molecule of the evidence, and to feel every shock and tremor of its probative force." See *Corcoran* v. *Merchants Trans. Co.*, 1 *Ga. App.* 741, 743 (57 S. E. 962) ; *Pendleton* v. *Atlantic Lumber Co.*, 3 *Ga. App.* 714 (60 S. E. 377) ; *Gresham*

v. *Stewart,* 31 *Ga. App.* 25 (119 S. E. 445). The evidence followed the allegations of the petition, and was sufficient to authorize the jury to find that the attack on the plaintiff's husband was unprovoked, and that it was made while the deputy sheriffs were acting colore officii. The plaintiff, as the widow of the deceased, was authorized to bring the suit for the full value of the life of her husband. Code, §§ 105-1302, 105-1308. The case should have been submitted to the jury, and the judge erred in granting a nonsuit.

*Judgment reversed.* *Stephens, P. J., and Felton, J., concur.*