30591. SMITH *v.* GLENS FALLS INDEMNITY COMPANY
et al.

DECIDED OCTOBER 19, 1944.   REHEARING DENIED NOVEMBER 10, 1944.

700

*N. F. Culpepper, W. S. Allen,* for plaintiff.

*L. W. Nance, Beck, Goodrich & Beck,* for defendants.

GARDNER, J.  As we construe the judgment of the court, there is here but one question presented for decision and that is whether under the allegations of the petition, the sheriff, when he killed James Smith, was acting by virtue of his office or under color of his office, on the one hand, or as an individual, on the other hand. Learned counsel for the defendants argue that the judgment on the demurrer also decided the question of the measure of damages, and contend that if the plaintiff is entitled to recover at all, she is not entitled to recover the full value of the life of the deceased, but only to the extent of the contributions he made to her. It is contended that in a petition such as is now before us, as to the surety on the official bond, the measure of the recovery against the surety is as prescribed in the Code, § 89-421, and "shall be the amount of injury actually sustained," and not the full value of the

life of the plaintiff's son, as prescribed in § 105-1307. As we construe the judgment of the trial court, which we have set forth above, the court did not pass upon this question. The fourth paragraph of the demurrer deals with the question of the measure to be applied to determine the recovery. The court specifically stated in the judgment that he was not passing upon any of the paragraphs of the demurrer except paragraphs 1 and 2. It is true that paragraph 1 alleges that the petition sets forth no cause of action, but in sustaining this paragraph in connection with paragraph 2, the judgment thereon could not be construed and extended to apply to the allegations of paragraph 4. In arguing paragraph 4 counsel for the surety must necessarily concede that the plaintiff (if the acts of the sheriff were under color of his office or by virtue of his office) is entitled to recover the amount of the contributions, or for the full value of the life. This goes to the measure, rather than to the right of recovery. In our view of the case it therefore follows that the court passed on only one question in the petition, and that is whether the sheriff acted by virtue of his office or under color of it in killing the deceased. The trial court not having passed on any other question, this court is without authority to pass on any other question.

■ Let us next inquire whether, under the allegations of the petition, the sheriff was acting (a) by virtue of his office; or (b) under color of his office; or (c) in his individual and personal capacity. There are a number of decisions of our appellate courts dealing with cases arising from the conduct of a sheriff in his official capacity by virtue of his office and under color of his office, and we will not engage in any lengthy discussion concerning this issue, but we will refer to some of these cases. An act done under color of office is discussed in *Luther* v. *Banks,* 111 *Ga.* 374 (36 S. E. 826), where it is defined to be "a pretense of official right to do an act, made by one who has no such right." And in *Hawkins* v. *National Surety Corp.,* 63 *Ga. App.* 367 (11 S. E. 2d, 250), an officer's act colore officii is thus defined: "An officer's acts are done colore officii when they are of such a nature that his official position does not authorize the doing of such acts, though they are done in a form that purports they are done by reason of official duty and by virtue of his office." In 15 C. J. S. 236 the phrase is defined in the following language: "A wrong committed by an officer under

pretended authority of his office." We also call attention to specific cases of our appellate courts the facts of which have been held to be acts under color of office as follows: In *Robertson* v. *Smith*, 16 *Ga. App.* 760 (85 S. E. 988), the facts were that the sheriff's deputy, killed the plaintiff's husband while attempting to arrest him unlawfully. Also see *Robertson* v. *Smith*, 16 *Ga. App.* 767 (85 S. E. 991). In *Copeland* v. *Dunehoo*, 36 *Ga. App.* 817 (138 S. E. 267), the officer illegally shot at the plaintiff in attempting to arrest her. In *Powell* v. *Fidelity & Deposit Co.*, 45 *Ga. App.* 88 (163 S. E. 239), s. c. 48 *Ga. App.* 529 (173 S. E. 196), the facts show that the sheriff's deputy without provocation unlawfully killed a prisoner who was in his custody under arrest. In *Richards* v. *American Surety Co.*, 48 *Ga. App.* 102 (171 S. E. 924), the deceased was lawfully at a still, but ran upon the approach of the officers. The deputy shot and killed him to prevent his escape. In *Glens Falls Indemnity Co.* v. *Dempsey*, 68 *Ga. App.* 607 (23 S. E. 2d, 493), the sheriff, while serving a search warrant, assaulted the plaintiff's husband. In *Aldridge* v. *Wooten*, 68 *Ga. App.* 887 (24 S. E. 2d, 700), the sheriff shot at an escaping convict and killed a bystander. See also *Mitchell* v. *Malone*, 77 *Ga.* 301. In this connection we also call attention to the following decisions setting forth acts which the court held to be acts of an individual and personal nature and not acts by reason of the office: *Robertson* v. *Smith*, 16 *Ga. App.* 760 (supra) ; *Fidelity & Deposit Company of Maryland* v. *Smith*, 35 *Ga. App.* 744 (134 S. E. 801) ; *Hodge* v. *United States Fidelity & Guaranty Co.*, 42 *Ga. App.* 84 (155 S. E. 95). In the light of the above decisions and the facts of those cases let us inquire whether the allegations of the petition in the instant case set forth such conduct on the part of the sheriff as to conclude that he was acting by virtue of his office, or under color of his office, or both, at the time he killed the deceased, or whether he was acting in his individual and personal capacity as a private citizen. To do this we must look to the whole transaction as alleged by the petition and not to one particular part of it, and we are bound to consider the allegations of the petition which are well pleaded as true. The petition alleges that the car in which the deceased and his party were riding had been obtained from the father of the deceased; that the party left Thomaston and after having obtained supper in Griffin drove around for a short time

and started back to Thomaston. Mr. Holloway, a member of the party, which consisted of five persons, some of them girls, was driving the car. A state patrolman arrested Mr. Holloway, took charge of the Smith car, and returned to Griffin with Mr. Holloway and the car. There was no warrant for Holloway. Holloway was delivered to the sheriff; also the keys to the car. The petition does not reveal the hour of the arrest. It merely states that it was in the evening.

We may concede that the patrolman had a right to make the arrest without a warrant, under the provisions of the Code, § 27-207, in that the misdemeanor committed by Holloway for not dimming his lights was committed in the presence of the patrolman, and that the law allows a reasonable time after the arrest to procure a warrant, under the provisions of § 27-212. It is also true that the sheriff had authority, if indeed it was not his duty, to receive Holloway from the patrolman, under the provisions of § 77-9902. Thus far the allegations show that the sheriff received Holloway, a member of the deceased's party, and placed him in jail by virtue of the authority of his office as sheriff. Let us see what thereafter happened. The sheriff also received the keys to the Smith car from the patrolman, thus, according to the allegations of the petition, leaving the five remaining companions of Holloway (including Smith) stranded in Griffin, Georgia, with no way to return to their homes. To us it is plain that the sheriff had no authority to retain these keys, but in doing so, having received them from the patrolman at the time he received Holloway, he was acting under color of his office. He certainly did not receive them in an individual capacity any more than he received Holloway in an individual capacity. He was acting throughout, thus far, by virtue of his office and under color of his office. The petition further alleges, immediately in this connection, that "after a few minutes her [meaning the plaintiff's] said son went back to the jail, *for the purpose of asking defendant Sheriff Middlebrooks to let him pay Mr. Holloway's fine, or give bond, and especially to get the keys to his car as there was an urgent necessity for him to have the keys so they could proceed to their home in Thomaston.* That he knocked on the door, and defendant Sheriff Middlebrooks, answered the knock, and that immediately defendant Sheriff Middlebrooks assaulted and struck her said son on the nose with a

blackjack or some other weapon, breaking his nose and causing it to bleed profusely, and at that time the wife of defendant Sheriff Middlebrooks came out of the door with a pistol and threatened to shoot him; that her said son took the pistol out of her hand and started back toward his car, and had gotten some twenty feet from the steps when he was shot in the back of the head by defendant Sheriff Middlebrooks and instantly killed." (Italics ours.)

Under these circumstances we conclude that the deceased had a perfect right to return to the jail for the purpose, as alleged, of making an effort to obtain the keys to his car; and we also think that he had a right to return for the purpose of discussing with the sheriff the matter of a bond for Holloway. It is true that the sheriff had no right to assess a fine for Holloway. We find little difficulty in reaching the conclusion that the deceased had a right to return to the jail for the purpose of discussing the procurement of his keys, and to discuss the question of a bond for Holloway with Mr. Middlebrooks in his official capacity of sheriff and not as an individual. We think such is the right of every citizen, in this country. At this stage of the transaction the petition alleges that the deceased knocked on the door, and that the sheriff answered the knock and immediately assaulted the deceased with a blackjack or some other weapon, striking him in the face, breaking his nose and causing it to bleed profusely. Then it was that the sheriff's wife came out of the door with a pistol, and threatened to shoot the deceased. Thereupon the deceased took the pistol from her and started back toward his car. When he had turned and gotten about twenty feet from the steps (where the sheriff was standing) the sheriff shot him in the back of the head, killing him instantly. Viewing the whole transaction—from the time of the arrest of Holloway until the fatal shooting—it reveals throughout that the sheriff was acting in part by virtue of his office and in part under color of his office. So far as the allegations of the petition go, by which we are bound, at no time was the sheriff acting in his individual and personal capacity as a citizen.

In this view of the question before us, the court erred in sustaining the demurrer and dismissing the petition.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*