## STATE OF GEORGIA *v.* HENDERSON *et al.*

1. The duties of an ordinary, under the laws of this State, are of a dual nature, — he acts as judge of the court of ordinary and also as cierk of that court.
2. The law requires the ordinary to give a bond, payable to the Governor, and this bond is styled the official bond of the ordinary. He is not liable on this bond for any judicial act, but is liable for any neglect or omission which pertains to his duties as clerk.
3. If, therefore, the General Assembly passes an act imposing additional ministerial duties upon the ordinary, and expressly making him liable on his bond

for a breach of such additional duties, and after its passage an ordinary is elected and gives bond as provided by law, such legislative act enters into the bond and becomes a part of its condition, and the ordinary and his sureties are liable upon the bond for any breach of the duties imposed by the act.

4. Where the bond given is joint and several, suit may be brought upon it against the sureties without joining the principal, especially where the principal is dead and his estate is insolvent and there has been no administration thereon.

5. Where the act imposing additional duties upon the ordinary declares that for non-performance of these duties the ordinary shall be liable upon his official bond, his sureties are likewise made liable, as there could be no official bond without sureties.

6. Where the same act declares that suit shall be brought on the bond in the name of the State, the action is not demurrable because so brought, although the bond is made payable to the Governor.

7. This court will not pass upon the constitutionality of an act of the General Assembly, unless it appears that the question was made or presented in the court below and passed upon by the trial judge. A general demurrer to a petition, on the ground that it sets out no legal or equitable cause of action, does not raise the question of the constitutionality of the statute upon which the action is based.

Argued June 24, — Decided July 19, 1904.

Action on bond.    Before Judge Roberts.    Irwin superior court.    September 8, 1903.

*John C. Hart, attorney-general, J. W. Haygood, B. B. Cheney,* and *Eldridge Cutts,* for plaintiff.    *J. H. Martin,* for defendants.

SIMMONS, C. J.    In 1872 the General Assembly passed an act which required the ordinaries of the State to sell certain lands which had never been granted by the State, or which had reverted to it.    The sales were to be conducted as are sheriff's sales, and the ordinaries were required, after paying the expenses of advertising, and deducting their commissions, to pay the money arising from such sales to the State treasurer.    The act further provided that the ordinaries shall, "for the faithful performance of their duty, and the full, fair, and prompt return of the money realized from such sale," " be liable on their official bonds as ordinaries." Acts 1872, p. 57.    In 1889 Paulk was elected ordinary of Irwin county, and gave bond with three sureties, the defendants in error in the present case. In 1890 the General Assembly passed a resolution in which attention was called to the fact that certain lots of land which, under the law, the ordinaries should have sold, appeared not to have been sold, and providing that the attention of

the ordinaries should be called to the law regulating the sale of such lands. Acts 1890–1, vol. 1, p. 542. This resolution made no change whatever in the existing law, but merely called attention to the fact that the law had not been obeyed.    We shall, therefore, not further discuss or consider this resolution.    In 1891 Paulk sold several lots of land under the provisions of the act of 1872. Some of the money arising from the sale of the lands was paid over to the State treasurer as directed by the act, but some $2,500 of the proceeds he failed to pay over.    Some time after the sale Paulk died, insolvent, and there was no administration on his estate.    In 1903 suit was brought in the name of the State against the sureties on Paulk's bond, the petition alleging the above-stated facts and praying a judgment against the sureties for the amount of the bond ($1,000), with interest.    The sureties demurred to the petition, on general and special grounds.    The trial judge sustained the demurrers, and the State excepted.

1, 2. The main contention of the learned counsel for the defendants in error was, that the ordinary, as such, was not required by law to give any bond, but only to give bond as clerk of the court of ordinary; that, therefore, a suit of this kind could not be maintained against the sureties upon the bond. Under our code, the ordinary acts in a dual capacity,—as judge and as clerk.    In one capacity he acts exclusively as judge of the court of ordinary, as in admitting wills to probate and in hearing and deciding caveats thereto.    In the other capacity he acts as clerk of the court of ordinary, in such matters as the record of the returns made and approved by him as ordinary.    In one capacity his duties are judicial, in the other ministerial.    Before the constitutional amendment in 1850 and 1851, and the act of January, 1852, carrying that amendment into effect, the inferior court of each county was the court of ordinary when sitting for " ordinary [probate] purposes."    It was distinct and separate from that court when sitting for the trial of criminal and civil business.    When sitting as the court of ordinary it had the power to elect a clerk of the court of ordinary, whose duties were prescribed by law and who was required to give a bond for the faithful performance of his duties as clerk.    The constitutional amendment above mentioned took the probate duties from the inferior court, composed of five justices, and put them in the

hands of one man, called the ordinary. The act of 1852 allowed the ordinary to be his own clerk, and required him to give a bond for the faithful performance of his duties as clerk. The effect of the change was to substitute one man, the ordinary, in relation to probate matters, for the five justices of the inferior court, and to substitute him as clerk for the clerk of the court of ordinary as it had existed before that time. From this it will be seen that the ordinary, when acting as a judge, is, like any other judge, not liable for any errors committed; but when he takes the place of the clerk of the old court he is under the same responsibilities and liabilities as was that officer. The clerk of the old court and his sureties were liable upon his bond for any breach of his official duties by which others were injured. It is clear, therefore, that the present ordinaries are not liable in their judicial capacity for any errors committed by them in deciding questions of law or fact, but, inasmuch as they have taken the place of the clerks of the old courts of ordinary, they are liable in that capacity as were the old clerks, that is, for the failure to perform any duty required of the clerks by law. As clerk the ordinary is liable for the non-performance or neglect of any duty devolving upon him as clerk. These views are in accordance with those expressed in *Smith* v. *Stapler*, 53 *Ga.* 300, and *Smith* v. *Taylor*, 56 *Ga.* 292. In each of those cases the suit was predicated upon a judicial act, and of course the court held properly that the ordinary was not liable on his bond. Nor does it matter that the act of 1872 declares that the ordinaries "shall be liable on their official bonds as ordinaries." This clearly refers to the only bond which the ordinary is required to give,— that is, for his faithful performance of his duties as clerk of the court of ordinary. The code itself styles this bond the bond of the ordinary, and the official bond of the ordinary (Civil Code, §§ 4220, 4223), meaning that it is the bond that the ordinary gives for the performance of his duties as clerk.

3. When the General Assembly in 1872 imposed additional duties upon the ordinary, by directing him to sell and dispose of certain lands and to return the proceeds to the State treasurer, these duties were not judicial in their character, but were imposed upon him as clerk of the court of ordinary. They were entirely ministerial. The act of 1872 directed him to sell lands

of a certain kind, and pointed out how they were to be sold and to whom the proceeds should be paid,—duties purely ministerial. No decision of a judicial character was necessary in order to comply with the act. This being so, and the ordinary having been elected and qualified and having given his bond in accordance with law some time after the passage of this act, the act became a part of the contract between him and his sureties and the State. It entered into the condition of the bond, and was binding upon him and his sureties. Murf. Off. Bonds, § 193.

4. Another objection urged by way of demurrer was that the suit could not be maintained against the sureties alone,—that it was necessary that the principal should be a party. A sufficient reply to this objection is that the bond in this particular case is joint and several, and the plaintiff is not required to make all of the parties thereto parties to the suit. Even had the bond been joint, the suit could have been brought against the sureties alone; for it was alleged that the principal was dead, that he was insolvent, and that there had been no administration upon his estate. Even had there been administration upon his estate, it would have been discretionary with the plaintiff whether the administrator should have been joined as a party defendant. See *Hargroves* v. *Chambers*, 30 *Ga.* 580; Civil Code, § 5014.

5, 6. The principles announced in the fifth and sixth headnotes require no elaboration. Of course when the General Assembly provided that the ordinary should be liable on his official bond, it meant the bond and the sureties thereon, for the official bond was required to have sureties. Then, too, the ordinary himself would, without any express declaration to that effect, have been liable for any money withheld by him which belonged to the State; and if the provision in the act means anything, it is that not only the ordinary but his sureties shall be liable upon the bond.

The act of 1872 expressly provided that the suit upon the ordinary's bond for a breach of the duties imposed by the act should be instituted in the name of the State. The General Assembly put additional duties upon one of its officers, imposing them for the benefit of the State, and made his bond liable for any breach of such duties. In so doing the General Assembly certainly had full power to declare that the suit should be in the name of the State, although the bond was made payable to the Governor.

7. The principle announced in the seventh headnote is fully sustained by the reported decisions of this court. See *Brown* v. *State*, 114 *Ga.* 60; *Savannah, F. & W. Ry. Co.* v. *Hardin*, 110 *Ga.* 433.

*Judgment reversed. All the Justices concur, except Fish, P. J., disqualified.*