# No. 12,175.

## Corder et al. *v*. People ex rel. Smiley.

(287 Pac. 85)

Decided March 31, 1930.   Rehearing denied April 21, 1930.

Mr. WILLIAM R. KELLY, Mr. CLAY R. APPLE, for plaintiffs in error.

Mr. THOMAS A. NIXON, for defendant in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS action in behalf of Richard Smiley, a minor,

against Howell Hatfield, a deputy sheriff, and Hubert Corder, sheriff of Weld county, and the Maryland Casualty Company, a corporation, official surety on the sheriff's bond, has for its object the recovery of a judgment against the defendants for personal injury inflicted on the plaintiff Smiley by the deputy sheriff, Hatfield, who, while acting as such deputy sheriff and while engaged in the performance of his official duties as deputy sheriff and under color of his office, unlawfully and negligently made an assault on Smiley by "shooting him with a bullet fired from a revolver" in the hands of Hatfield, causing serious personal injury to plaintiff.

Upon issues of fact joined by Hatfield's answer in his own behalf, and the separate joint answer of sheriff Corder and his surety, the jury impaneled to try the cause returned a verdict for the plaintiff in the sum of $1,163.50 against all three defendants, upon which verdict the court rendered judgment for the plaintiff over the objection of the defendants. Hatfield, the deputy sheriff, has taken no steps to have this judgment against him reviewed, but the sheriff and his official surety are here with their writ of error to have it set aside.

Apparently all three defendants assumed that the complaint on its face states facts that constitute a good cause of action against them, for neither of them has attacked the initial pleading either by motion, demurrer or otherwise, for any defect therein, either of form or substance, and they make no such attack on this review. We are in accord with the defendants that the complaint is good on its face.

The joint answer of the sheriff and his surety, while admitting that Hatfield was a special deputy sheriff, denies that in the act of firing his revolver he was acting officially as such. The separate answer of Hatfield in effect is, as claimed in the brief of his counsel, that in firing his revolver and wounding the plaintiff, he was acting in his personal, individual capacity and not in his official capacity as deputy sheriff.

■ The principal and important question to be determined is whether the defendant Hatfield, in firing his revolver and wounding the plaintiff Smiley, was acting officially as a deputy sheriff or merely in his private or individual capacity. It seems from this record that Hatfield had heretofore been tried and convicted in a criminal action for this shooting of Smiley. In his testimony in the action now under review Hatfield testified that he was not purporting to act as a deputy sheriff when he fired the shot that wounded Smiley. Yet in his cross examination he was compelled to admit, and virtually did admit, that in the trial of the criminal action he defended the same upon the ground, in part at least, that when he fired the shot he was acting in the capacity of a deputy sheriff in an attempt to prevent a disturbance of the peace and quiet of the community. A careful examination of the record discloses, we think, that upon this issue as to the capacity in which Hatfield was acting when he shot Smiley, while in some respects conflicting, Hatfield's own testimony, while contradictory, was enough upon which to go to the jury upon this issue and that the jury was justified in finding from the evidence as a whole that Hatfield was attempting to act, and did act, in his official capacity and under color of his office in attempting to quell a manifest disturbance of the peace.

In view, however, of the able and ingenious brief of defendant's counsel we shall consider some of the specific objections relied upon by them for reversal, after first summarizing the material testimony in the case. Hatfield owned and operated a store in the town of Pierce, Weld county. He also farmed some lands nearby. Sheriff Corder had appointed him as deputy sheriff, the only restriction imposed being that he was not given power to serve papers without orders from the sheriff himself. On the evening of October 31, 1926, which was Halloween, preceding All Saints' Day, plaintiff Smiley and six or seven other high school boys in the town of Pierce got together about 7:30 or 8 o'clock and began or entered upon a

continuous series of Halloween pranks often engaged in by young boys at such times, and continued them until about 9:30 o'clock. In chronological order we recite some of these boyish pranks. One of the boys rode a horse on the sidewalk of the town in front of defendant Hatfield's store three different times, and on the last ride Hatfield came out of his store, pursued the boy who had been riding on the sidewalk, and shot at or towards him. Shortly thereafter the boys "joked" Hatfield about his revolver, calling it a popgun, saying that it would not shoot, and Hatfield retorted that he would show them if they would step out into the street. This was about 8:30 o'clock.

Soon thereafter the boys got together across the street and then went to a blacksmith shop where they picked up some old wagon wheels, taking them to a beet dump nearby and pushed the wheels over the dump and returned to the blacksmith shop. Sometime thereafter they started to take a tank wagon they found into the street and some of the boys were pushing and some pulling. They proceeded down Lincoln Highway with this wagon at about 9 or 9:30 o'clock at night and after they had gone about a block, Hatfield started to run after them. He testified that the boys were "tearing up stuff," monkeying around and making a racket. When the boys saw him approaching, they started to run and Hatfield ran after them, fell down in some weeds, got up and called to the boys to stop, and when they did not comply with his command, he fired two shots, the first of which struck Smiley and caused serious injuries to him.

Smiley was taken to the "teacherage" nearby, a wound was found on him and a physician was called. In a few minutes Hatfield came to the "teacherage" and there engaged in an altercation with one or more of the boys who were there and said, among other things, that he would arrest them if they were not quiet and did not stop crying.

The defendant Hatfield, according to the testimony of some of the witnesses, was watching and following the

boys during practically the entire evening and at some time during this oversight he declared that he was a deputy sheriff and was going to protect property in the town and was assigned to do so and was going to do it, and again mentioned that he was a deputy sheriff. During this evening he had also deputized a man named Hargis to assist him as sheriff. Hatfield testified, among other things, that he was trying to keep the boys from "getting into anything," and in answer to a question proposed by plaintiffs' counsel, "Just what was your idea in shooting?" he answered, ";To make him know someone had authority to stop him."

Another question propounded to him was, "You were trying to make them know you had some authority with that gun, weren't you?" Answer, "Yes."

Hatfield further testified in substance that he thought he had the right to protect the property in the town of Pierce other than his own, and that the only authority he had to act in that capacity was as deputy sheriff, and that he believed he had such authority when the people needed protection. In his testimony in the previous criminal action against him in answer to a question if he fired this shot to scare the boys, he answered, "I shot and thought it would kind of scare him out of riding on the sidewalk, and learn him that someone had a little authority to keep the law."

We have made this summary of the evidence principally for the purpose of demonstrating that even though the testimony of Hatfield himself was contradictory, there was enough in it bearing upon the capacity in which he acted during this night to justify its submission to the jury to determine in what capacity Hatfield acted when he fired the shot that inflicted the wound upon Smiley. We cannot disturb this finding of the jury. It was no error for the court to deny the defendant's motion for nonsuit at the close of the testimony. Defendant cites two of our own cases, *People v. Beach,* 49 Colo. 516; *People v. Pacific Surety Company,* 50 Colo. 273, claiming

that those decisions sustain his contention that the sheriff was acting, not in his official capacity or under color of his office, but in his private capacity as a citizen of the town and within his right to protect his own property. Neither of these cases is in point under the evidence in this case. In the Beach case we expressly said that the complaint itself was not sufficient in that it failed to show by proper averment of facts that the acts charged against the deputy sheriff were done by virtue, or under color, of his office. The complaint before us is not thus defective.

In the Pacific Surety case, supra, the complaint was held subject to a general demurrer, and throws no light at all upon the merits of a case such as the evidence now under consideration tends to establish.

■ The defendants further say that no duty existed under the facts of the case which required Hatfield to make an arrest without a warrant because there was no breach of the peace or disturbance of the peace which justified such action on the part of a peace officer. Unquestionably there was sufficient evidence to go to the jury upon that question.

■ The court properly instructed the jury, among other things, that a breach of the peace is an offense well known to the common law, and further instructed the jury that section 8759, C. L. 1921 makes it the duty of sheriffs, undersheriffs and deputies to keep and preserve the peace, and to quiet and suppress all unlawful acts and assemblages. Section 6974, C. L. 1921, provides that if a person shall, for malice or mischief, overturn a cart, wagon or other carriage, when the damage resulting therefrom be $20 or less, he shall, on arrest and conviction, be punished, etc. Section 6824 of our statutes provides that if two or more persons assemble for the purpose of disturbing the public peace, or committing any unlawful act, and do not disperse upon being desired and commanded to do so, by a sheriff or other public officer,

such person so offending shall, upon conviction, be fined, etc.

These provisions of our statute make it clear that it was the duty of Hatfield, as deputy sheriff, at the time that these pranks were engaged in, to preserve the peace and to quiet and suppress this assemblage of boys. It is likewise the duty of the deputy sheriff to prevent them from indulging in acts which constitute malicious mischief, such as running a wagon off the premises of a person to another place. It was also the duty of the sheriff to disperse the unlawful assemblage of the boys and arrest them without a warrant and take them before a justice of the peace.

There was testimony in the record justifying the court in submitting to the jury whether or not these Halloween pranks of the boys constituted a disturbance of the peace, and there was sufficient testimony to justify the court in submitting to the jury for its finding whether or not this assemblage of boys was lawful or unlawful. The testimony unquestionably was sufficient to justify the court in submitting to the jury, as it did, the issue as to the capacity in which Hatfield was acting at the time he fired the shot which injured the plaintiff Smiley.

Defendant's counsel argue with much ingenuity that there was no testimony to show a breach or disturbance of the peace, or as to the tumultuous character of the assemblage of boys and the purpose for which they assembled on this occasion. The court's instructions were clear and explicit that such questions of fact were for the jury to pass upon.

Another objection that is argued by defendant's counsel is that the only duty that rested upon Hatfield as a deputy sheriff upon this occasion, if the boys were disturbing the peace, was to arrest them, which he might do without a warrant, but that was the extent of his duty and power. We do not conceive this to be true. Our statute makes it the duty of the officer to preserve the peace of the community in which he lives. Undoubtedly he may

arrest without a warrant, for our statute expressly says that he may do so if an offense is committed in his presence or in his sight or hearing, but this is not the only thing that he may do. He may properly attempt, as he did, by reasoning with the boys, to dissuade them from their acts and conduct which disturb the peace and quiet of the community. This the defendant Hatfield unquestionably attempted to do. He himself testified that he desired the boys to cease their pranks. It is immaterial what reason he may have had for making the request. He himself was a witness to their conduct and saw and heard what was taking place, and he might properly attempt to dissuade them with or without going to the extent of actually making an arrest of the perpetrators of an offense to which he was a witness.

The court carefully, in its instructions, observed all of the necessary requirements in the light of the testimony. It left to the jury for its determination the issue as to whether or not there was a disturbance of the peace and an unlawful assemblage.

With much force and ingenuity counsel for the defendant argue that the court committed error in admitting the evidence offered by the plaintiff as to the conduct of the boys when they began this series of pranks, and counsel insists that the evidence should have been limited to the period of time about 9:30 o'clock in the evening when he fired the shot that injured the plaintiff Smiley. We do not think so. The testimony clearly discloses that these boys were engaged in performing a series of disturbances known as Halloween pranks and that they consisted of riding horseback on the sidewalk, pushing wagon wheels over a beet dump, making loud and tumultuous noises and commotion throughout the evening. The court properly ruled that evidence as to the conduct of these boys should not be limited to the last of the series of improper acts which consisted of pushing and pulling a wagon along the public highway, which

they had unlawfully taken possession of against the will of the owner.

The defendant, as the jury found, was guilty of an unlawful act in shooting the plaintiff. For the lawful act of a peace officer, of course, no liability attaches. It is only for unlawful acts that legal liability and damages are imposed. For an unlawful act of a deputy sheriff, which is not committed by him in the discharge of his official duties, while he himself is liable to damages to one injured thereby, sureties on the official bond of a sheriff may not be held. But where a deputy sheriff is acting in his official capacity and under color of his office, if in the performance thereof, he exceeds the limit of his authority, not only is the deputy himself liable to one injured thereby, but the sheriff and the latter's official surety are also liable. Such, in effect, were the instructions of the court to the jury, under a state of facts which the evidence disclosed. We find no prejudicial errors of the trial court either in its rulings on objections to evidence or in its instructions to the jury. The judgment is therefore affirmed.

MR. JUSTICE ALTER not participating.