DECIDED JUNE 9, 1938.

26726.   JONES, administrator, *v.* REED *et al.*

*R. B. Pullen, C. E. Kay,* for plaintiff.

*Gordon B. Gann, Mozley & Combs,* for defendants.

MacIntyre, J.   A suit was brought against the sureties upon the bond given by the ordinary as a condition precedent to his taking office. The petition alleged, in paragraph 4, "that on November 14, 1931, J. M. Gann, acting in the official capacity of ordinary of Cobb County, Georgia, passed an order in the matter of the estate of Roswell O. Jones, deceased, said estate being administered by E. W. Jones as administrator thereof, authorizing the payment of the sum of $443.58 to the ordinary of said county, said sum being the distributive share of said estate to Charlie Jones, an heir at law of said estate, his address being unknown; that said amount was paid to the ordinary, a copy of said order and the receipt for said funds being duly recorded in return book, page 505, of the records of the ordinary's court of Cobb County, an extract thereof showing said facts being hereto attached, marked exhibit 'B,' and made a part of this petition and paragraph." The exhibit is as follows: "Charlie Jones, who is an heir at law of deceased estate, his whereabouts is unknown, and the last knowledge of him was two years ago or more, and his address is not known, if living. Administrator desires to close said estate and be relieved of the expense bond; comes now and pays into court or the ordinary of said county the amount and share going to said Charlie Jones, and asks that he be relieved. The amount of interest going to him is $443.58. Total amount paid out, $7340.70. Received of E. W. Jones, Ad'tor of the estate of R. O. Jones, four hundred and forty-three & 58/100 dollars as above stated.   J. M. Gann." Paragraph 7 alleged: "That J. M. Gann, as ordinary, failed to account for said funds in the ordinary's court when he retired from office, and has failed and refused to account to E. W. Jones as administrator of the estate of Roswell O. and Z. T. Jones, and/or Charlie Jones's estate and/or his heirs at law, or to account for said funds in any manner whatsoever." The petition also al-

leged that the said orders authorizing the payment of said funds to the ordinary were fraudulent and corrupt, because they were in direct violation of the Code, § 113-2304, which required said funds to be deposited in some solvent bank designated by the ordinary, or retained by the administrator. Paragraph 9 alleged "that the acts alleged herein to have been committed by J. M. Gann as ordinary were unlawful and constituted a breach of his official duty as ordinary of Cobb County, Georgia, for which the sureties on his bond, marked exhibit 'A,' are jointly and severally liable to plaintiff." The petition sought a recovery of the amounts so deposited, for which funds the ordinary had failed and refused to account. E. W. Jones was also administrator for another estate, and the rules of law relative to the allegations of the petition with reference to it are the same as those herein discussed and decided.

■ The ruling announced in headnote 1 needs no elaboration.

■ The sureties on the bond were "bound unto His Excellency L. G. Hardman, Governor of the State of Georgia" and the suit says: "The petition of the State of Georgia, for the use and benefit of E. W. Jones as administrator of the estates of Roswell O. Jones, deceased, and Z. T. Jones, deceased, as plaintiff, respectfully shows to the court the following facts:" The defendant contends: "To maintain a suit for the use of another, there must be a legal right of action in the party bringing it. And if he has no legal right of action, the suit is properly dismissed on demurrer. The fact that the plaintiffs in their pleading declare their intention to sue for the use and benefit of a third person does not raise any question as to the liability either of the person or of the defendants to such third person and was subject to dismissal on general demurrer." This exception is not meritorious. The Code, § 81-1307, allows a plaintiff, when it becomes necessary for the purpose of enforcing his rights, to substitute the name of another person in his stead, suing for his use. "Since such an amendment is allowable for the designated purpose 'of enforcing the rights of such plaintiff,' some showing should be made to the court that some right of the original plaintiff is connected with the cause of action he desires to assert in the name of the nominal party to be substituted; but this right need not be so perfect as to be capable of direct enforcement, either in law or in equity. It is analogous to the practice in ejectment, where the real plaintiff is al-

lowed to lay demises in the name of any living person, and recover upon any of such demises, though he be unable to connect his title by legal evidence with the title of the person in whose name he recovers; provided that the court is satisfied that he bona fide claims under such person, or has some connection with his title." *Atlantic Coast Line R. Co.* v. *Hart Lumber Co., 2 Ga. App.* 88 (58 S. E. 316). We might also add that upon looking to the original record in *State of Georgia* v. *Henderson, 120 Ga.* 780, we find that the sureties on the ordinary's bond were bound unto the Governor of the State of Georgia. The suit stated: "The petition of the State of Georgia respectfully shows," etc. The petition was held not subject to general demurrer.

■ Before the constitutional amendments approved February 23, 1850 (Ga. L. 1849-1850, p. 117), and repassed December 5, 1851 (Ga. L. 1851-1852, p. 50), and the act of January 21, 1852 (Ga. L. 1851-1852, pp. 90, 96), carrying that constitutional amendment into effect, the inferior court of each county was the court of ordinary when sitting for "ordinary [probate] purposes." It was distinct and separate from the court when sitting for the trial of criminal and civil business. When sitting as a court of ordinary it had the power to elect a clerk of the court of ordinary, whose duties were prescribed by law, and who was required to give a bond for the faithful performance of his duties as clerk. The constitutional amendment above mentioned took the duties away from the inferior courts and transferred them into the hands of one man called the ordinary, and gave him the right to act in the dual capacity —as judge and as clerk. The act of 1852, supra, prescribed "that each and every ordinary, before he shall enter on the duties of his office, shall give bond and security in the sum of . . dollars for the faithful discharge of his duties as clerk." "The effect of the change was to substitute one man, the ordinary, in relation to probate matters, for the five justices of the inferior court, and to substitute him as clerk for the clerk of the court of ordinary as it had existed before that time. . . The clerk of the old court [of ordinary] and his sureties were liable upon his bond for any breach of his official duties, by which others were injured, . . that is, for the failure to perform any duty required of the clerks by law. As clerk the ordinary is liable for the non-performance or neglect of any duty devolving upon him as clerk." *State of*

*Georgia* v. *Henderson,* supra. The Code of 1933, § 24-1704, states: "They [ordinaries] must also give bond and surety, in the sum of $1000 for the faithful discharge of their duties as clerks of the ordinary." This section has been brought forward in each successive Code since 1863. Black's Law Dictionary (3d ed.) defines clerk "as a person employed in a public office of the court whose duty it is to keep the records or accounts." The Code of 1863 prescribed that "ordinaries must keep their offices at the place and in the manner prescribed for clerks of the superior court," and this was brought forward in each of the successive Codes until the Code of 1933, in which (§ 24-1714) it is said: "The ordinary shall keep his office and all things belonging thereto at the county site and at the court-house, unless impracticable from any cause, when it may be kept at some other designated place not more than one mile therefrom, of which public notice must be given." The Code, §§ 24-2714, 24-2715, fixes the duties of the clerk of the superior court, and § 24-2722 says that if these clerks of the superior court "receive any money on any suit or judgment from their courts, or otherwise, and do not faithfully account for it, . . they and their sureties are likewise liable on their official bonds." We think the duties of the clerk of the ordinary are somewhat similar to those of the clerk of the superior court; and especially is this true where the clerk of the court of ordinary, as such clerk, receives money on a suit or judgment of the court of ordinary; and if the judge of the court of ordinary orders money paid into the court of ordinary, and the clerk of the court of ordinary receives that money paid into the court of ordinary, the clerk of the court of ordinary is doing a ministerial act, and nothing is left to the discretion of the clerk but to receive it, and the receiving of the same is an act of the clerk; and if the clerk does not faithfully account for it, he is liable on his official bond as clerk.

Should the judge of a superior court merely order certain money paid into the superior court, nothing else appearing, who would be presumed to receive it upon behalf of the court? We think the clerk thereof. Code, § 24-2722. By parity of reasoning, where the petition in the instant case shows that "J. M. Gann, acting in his official capacity of ordinary, passed an order . . authorizing the payment of $443.58 to the ordinary of said county," and the "return book" shows that the administrator paid this amount

"into court of the ordinary of said county" and that "J. M. Gann, ordinary, failed to account for said funds to the ordinary's court," these allegations were in effect that J. M. Gann, acting in his judicial capacity, entered an erroneous order or judgment authorizing the payment of the money into the court of ordinary, and that the clerk of the court of ordinary, who happened to be J. M. Gann, acting as ex-officio clerk of said court by virtue of his office as ordinary, received this money on behalf of the court and failed and refused to account for such funds when called upon so to do. The Code, § 24-1705, in part provides for the qualifying of ordinaries by the judge of the superior court, and the approval of the "official bond of such ordinaries," and that "in all cases a certified copy of such bond shall be sufficient original evidence on which to sue and recover;" and § 24-1706, in stating when other security shall be required of the ordinary, uses the words "bond of such ordinary." Thus the words, "official bonds of such ordinaries," as used in § 24-1705, and the words "bond of such ordinary" in § 24-1706, mean that it is the bond that the ordinary gives for the faithful performance of his duties as clerk, this being the only bond the ordinary is required to give. On the other hand, when the ordinary is acting as judge of the court of ordinary, he is not liable in his judicial capacity for any errors committed by him in deciding questions of law or of fact. The ordinary is not liable on his bond for any judicial act, but he is liable for any neglect or omission which pertains to his duty as clerk. *State of Georgia* v. *Henderson,* supra. While the bond in this case is to faithfully "discharge the duties of ordinary . . or discharge all the duties thereof," yet, in conformity to the statute, the condition will be held as being for the faithful performance of his duties as clerk of the ordinary. *Smith* v. *Taylor, 56 Ga.* 292 (2).

We think the petition was sufficient to withstand a general demurrer, as it in effect alleges the receipt by the clerk of a court of certain money under and by virtue of an order or judgment of the judge thereof. Whether this order or judgment was judicially correct or not does not control the liability of the clerk where he fails to account therefor when called upon so to do. "If a person has been injured and suffered damage from the consequence of any wrongful act committed by an officer under color of his office, he can sue such officer personally or upon his official bond, and re-

·cover the amount of the damage sustained. *Markham* v. *Ross,* 73 *Ga.* 105; *Luther* v. *Banks,* 111 *Ga.* 374 (36 S. E. 826). 'An officer's acts are done colore officii when they are of such a nature that his official position does not authorize the doing of such acts, though they are done in a form that purports they are done by reason of official duty and by virtue of his office.' *Robertson* v. *Smith,* 16 *Ga. App.* 767, 769 (85 S. E. 991). Color of office is 'a pretense of official right to do an act, made by one who has no such right.' *Luther* v. *Banks,* supra." *Citizens Bank* v. *American Surety Co.,* 174 *Ga.* 852, 860 (164 S. E. 817). The acts alleged were at least alleged to be done under color of office. Regardless of whether the ordinary was authorized to pass the order, the ordinary, as clerk, received the funds under the order, thus acting at least under color of office. Code, § 89-418, par. 4.

*Judgment reversed.* *Guerry, J., concurs. Broyles, C. J., dissents.*