(No. 6991. April 24, 1942)

EDWARD LYNN GRAYSON, a minor, by LAVAUGHN M. GRAYSON, his guardian, Respondent, v. JOSEPH LINTON, ROBERT S. CALLIS, BANNOCK COUNTY, A political subdivision of the State of Idaho, Respondents, THE METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK, a corporation, Appellant.

(125 Pac. (2d) 318)

Jones, Pomeroy & Jones, for Appellant.

Black & Black, for Respondent, Edward Lynn Grayson; Finis Bentley, for Respondent, Joseph Linton; Clarence M. Jeffery, for Respondent, Bannock County.

GIVENS, C.J.—Respondent LaVaughn M. Grayson is the duly appointed guardian of the estate of his minor brother Edward Lynn Grayson, whose sole estate at the time of the controversy herein apparently consisted of the Southwest Quarter of the Northeast Quarter and the Northwest Quarter of the Southeast Quarter, Section 32, Township 6 South, Range 36 East Boise Meridian, 80 acres in Buckskin Basin, Bannock County. Evidently but little revenue was derived from this land, and the property was sold to the county for taxes April 1, 1936. Robert S. Callis, one of the original defendants herein, who defaulted, with consequent judgment entered against him and no appeal therefrom, was the duly appointed probate judge of Bannock County during all of the time involved herein.

There is evidence to the effect and the court found that during 1940 the probate judge advised the guardian to sell the property in order that the accumulated taxes might be paid and something saved therefrom for the benefit of the ward, whereupon the guardian secured respondent Linton as purchaser, who bid $800, the appraised price, and deposited with the probate court, as required by him, ten per cent of the bid January 24, 1940. February 10, 1940, the probate judge wrote the General Casualty Company of America, which had written the guardian's bond and upon which premiums were in default, in response to their query with reference to such delinquency, as follows:

"Your letter February 8th.

"You are advised that the property in this guardianship matter is now being offered for sale and will be confirmed shortly.

paid directly into the Court and will not be handled by

"However, this Court will require that all monies be

the guardian. I note there are premiums due on this bond, and this matter will be taken care of as soon as the property is sold."

Linton and his wife testified the probate judge told them he would require the purchase money, i.e., balance of $720, to be paid into court, which was done February 24, 1940. The title to the land was then questioned by Linton's attorney, whereupon a quiet title suit was instituted by the guardian and brought to a successful conclusion July 17, 1940, when demand was made by the attorney for the guardian upon the probate judge for the money, whereupon it was disclosed the same had been embezzled by the probate judge.

The present action ensued, being one for a declaratory judgment against the probate judge, the purchaser Linton, and the appellant casualty insurance company which had written the official bond covering the probate judge. The trial court absolved the purchaser from liability because he had paid the purchase money to the probate judge, awarded nothing against Bannock County, and entered judgment against the probate judge and his surety. The appeal is by the surety company on the ground the money was received by the probate judge neither under color or by virtue of his office, and consequently there is no liability, urging that there was no statute which either required or authorized the payment to, or receipt by, the probate judge of this money and that the same should have been paid to the guardian. The evidence discloses that the guardian acted under advice of counsel in acquiescing in the payment by the purchaser of the purchase price to the probate court. While respondent attempts to make some point of the wording of the bond as being broader or more binding than what he contends is the ordinary official bond, we do not base our decision thereon.

Finding number 9, supported by the evidence, is pertinent:

"That the said property of said minor so sold was heavily burdened with taxes and said minor was about to lose said property; that the guardian had not paid the premium on the guardian's official bond, and Judge

Callis had called said guardian in and advised him to find a buyer for said property to save it for said ward; that the said Probate Judge informed the guardian and the defendant Linton and also the surety company which wrote the guardian's bond that he, as probate judge would require all money received from the proceeds of the sale of said real estate to be paid to him as Probate Judge, and that he would see that the proceeds were properly disbursed."

There has been perhaps lack of complete uniformity of expression by this court with regard to the scope of liability of bonds of public officers dependent upon whether the acts of the officer were done by color or virtue of office, but it is unnecessary to go further back than *Helgeson v. Powell,* 54 Ida. 667, 34 Pac. (2d) 957, where this court expressly and definitely held that "it is immaterial whether the officer was acting by virtue of his office or under color of office, the surety is bound for his acts." It is contended, however, that this case overlooked and failed to take into consideration *Power County v. Fidelity & Deposit Co.,* 44 Ida. 609 260 Pac. 152, and that a different rule should prevail as between peace officers and ministerial or judicial officers. The pertinent rule in the Helgeson case is not in conflict with the statement in the Power County case, because the court there said: "Of course, any county officer, like any other person, is liable to the county for moneys received for the use and benefit of the county, but this liability is a private and personal liability, unless the money has been received by virtue of his office, *or at least in a proper case under color of his office.* The appellant did not contract to become liable for defalcations by French of moneys received by him in a personal or private capacity, or as a mere volunteer, as in this case." (emphahis ours) Thus the Power County case recognized liability under color of office under certain circumstances. No logical distinction between the classes of officers can be made or is supported by any authority.

It is only necessary therefore herein to determine whether or not the probate judge in requiring the payment to, and receipt by, him of the purchase price was

acting under color of office. At the time the initial ten per cent on the bid was paid the guardian was in default in the payment of the premium on his bond, even though an additional $800 bond had been required protecting the sale of the property. But little revenue had been derived from the property, and it was held by the county under tax title. At the time for payment of the balance of the purchase price it was discovered that the title was defective, or at least the purchaser refused to take it until title was quieted. Thus the purchaser was entitled to protection in the payment of the purchase price until he received a title which he was willing to purchase (*Brockman v. Roberts,* 89 Okla. 59, 213 Pac. 543); also, redemption had to be made from the county of its outstanding tax title.

In connection with 15-1829, 15-1830, 15-1831, and 15-1837, as amended by Chapter 100 of the 1935 Session Laws, and as bearing upon whether his acts were under color of office the probate court may have considered that under 15-1509 he had the power under Section 6-701, and it was his duty to protect the ward and the purchaser pending quieting of the title by ordering the money paid to him that he might hold it until the conclusion of what was undoubtedly "litigation." (*Jackson v. Porter,* 87 Okla. 112, 209 Pac. 430.) He was thus not a volunteer, interloper, nor merely an unofficial go-between, but was proceeding as probate judge in the discharge of his supervisory duties over a minor through his guardian entitled to protective orders of the court. The probate court is the original court of exclusive jurisdiction over guardianship matters and must protect the minors under its care. (1-1202 I. C. A.; *Idaho Trust Co. v. Miller,* 16 Ida. 308, 102 Pac. 360; *Hill v. Federal land Bank,* 59 Ida. 136, 80 Pac. (2d) 789; *Snow v. Probate Court,* 60 Ida. 611, 95 Pac. (2d) 844; *In re Hickory's Guardianship,* 75 Okla. 79, 182 Pac. 233; 28 C. J. 1064, sec. 20.)

"There is no doubt but that when the wards were domiciled within this state and their only property, these insurance policies, were within the state, the probate court had jurisdiction to appoint a general guardian and to

direct and control his conduct as such guardian. After having made such appointment the court retained jurisdiction for all purposes in connection therewith until his accounts are rendered and he is legally discharged." (*In re Arva and Elmer Brady,* 10 Ida. 366, 79 Pac. 75.)

"A guardianship is a trust relation of the most sacred character, in which one person, called a 'guardian,' acts for another, called the 'ward,' whom the law regards as incapable of managing his own affairs. The purpose of statutes relating to guardianship is to safeguard the rights and interests of minors and incompetent persons, and the courts should be vigilant to see that the rights of such persons are properly protected. The court having jurisdiction of a guardianship matter is said to be the superior guardian, while the guardian himself is deemed to be an officer of the court." (25 Am. Jur., sec. 2, page 7.)

"A guardian acts, as has been shown, as an arm or officer of the court, from which it follows that the office or trust is administered under judicial control, and the guardian may be regulated and controlled in the management and disposition of the property and person of the ward. Ordinarily, however, the control exercised by the court is largely theoretical; in actual practice the court knows very little concerning the guardian's acts and is not usually informed except by reports which appear when requests are made to dispose of the ward's property by sale. The guardian is virtually a free agent so long as he is guilty of no acts detrimental to his ward; in handling the estate he exercises his own judgment, and in his control of the real property, except in so far as its title is concerned, he operates as freely as though the property were his own." (25 Am. Jur., sec. 61, page 41.) The probate judge had power to make some order and hence the power to commit error (*Hill v. Federal Land Bank, supra,* at 142), still his acts were as probate judge exercising jurisdiction over the guardian and the minor's estate.

The probate judge may have intended to commit this crime at the time he advised the guardian to sell the property. The point of liability arose when, under the

cloak of his office, he misappropriated the money. His acts with regard to obtaining possession of this money were done under the guise of proper performance of duty and with sufficient statutory sanction, even though erroneous or unjustified, to come within the scope of the bond's obligation that he would not commit affirmative or negative acts of wrongdoing. Every official who breaches his duty departs from official conduct, but the very purpose of requiring a bond is to protect against such a contingency and to reimburse the one who suffers thereby.

Without deciding whether the probate judge had authority to require this money to be paid to him, in view of the exigencies in the particular case, these statutory provisions are sufficient to justify our conclusion that this requirement that the money be paid to him was under color of office, if, indeed, not by virtue of office, hence his bond, as determined by the trial court, was liable for his subsequent defalcation of these funds. (*Smith v. Lovell*, 2 Mont. 332; *Crose v. John*, 96 Wash. 216, 164 Pac. 941; *State v. Llewellyn*, 23 N. Mex. 43, 167 Pac. 414; *Corder v. People*, 87 Colo. 251, 287 Pac. 85; *Abbott v. Cooper*, 218 Cal. 425, 23 Pac. (2d) 1027; *Long v. Brown*, 186 Okla. 407, 98 Pac. (2d) 28, at 34-6; *Burkland v. Bliss*, 62 S. Dak. 91, 252 N. W. 25; *National Surety Corporation v. Sholtz*, 123 Fla. 110, 166 So. 213; *Maryland Casualty Co. v. Eaves*, 188 Miss. 872, 196 So. 513; *Jones v. Reed*, 58 Ga. App. 72, 197 S. E. 665; *Barboursville ex rel. Bates v. Taylor*, 115 W. Va. 4, 174 S. E. 485, 92 A. L. R. 1093; *Hawkins v. National Surety Corporation*, 63 Ga. App. 367, 11 S. E. (2d) 250 *State v. Roth*, 330 Mo. 105, 49 S. W. (2d) 109; *City of Festus v. Kausler*, (Mo.) 105 S. W. (2d) 646; *Maryland Casualty Co. v. Alford*, 111 Fed. (2d) 388; Anderson on Sheriffs, etc., Vol. 1, p. 57, sec. 62.)

Judgment affirmed. Costs to respondent Grayson against Metropolitan Casualty Insurance Company only.

Budge, Morgan, and Ailshie, JJ., concur.

Holden, J., dissents.